SCOTSMAN MANUFACTURING COMPANY, INC., A CALIFORNIA CORPORATION, APPELLANT, v. THE STATE OF NEVADA, THE NEVADA DEPARTMENT OF TAXATION, AND THE NEVADA TAX COMMISSION, RESPONDENTS.

No. 20720

March 28, 1991

808 P.2d 517

[Rehearing denied August 28, 1991]

*Guild & Hagen,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, and *Kateri Cavin,* Deputy Attorney General, Carson City, for Respondents.

# OPINION

*Per Curiam:*

In this appeal, the court is asked to consider the effect of the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, upon Nevada's attempt to impose a sales tax upon a modular home builder who sold homes used by the United States Department of Energy ("Department of Energy"). Ruling upon a cross-motion for summary judgment, the district court held that the sale of modular homes was *not* exempt from Nevada state sales taxes as a matter of law. For the following reasons, we reverse.

## THE FACTS

Scotsman Manufacturing Company, Inc. ("Scotsman") is a California corporation involved with the construction of modular homes. Reynolds Electrical and Engineering Corporation, Inc. ("REECo") is a Texas corporation and is a Department of

Energy prime contractor. Under the terms of REECo's prime contract with the Department of Energy, REECo was responsible for soliciting bids for the design, manufacture, and transportation of modular housing units to be installed on federal land at the Tonopah Test Site.

In December 1983, REECo requested bids for the modular houses in a bid request that specifically provided that any subcontract for the construction of the modular homes was:

> [E]ntered into for and on behalf of the United States of America, and title to all equipment and materials furnished . . . shall pass directly from the Subcontractor to the Government. Payment for work, equipment and materials furnished . . . will be made directly from funds belonging to the United States. . . .

Scotsman submitted a bid and was awarded the subcontract to provide the modular housing units.

In July 1984, Scotsman received a letter from the State of Nevada Department of Taxation ("Department of Taxation") informing Scotsman that it was required to register with the Department of Taxation and pay either sales or use taxes for the sale of the modular homes. After further communication, the Department of Taxation wrote another letter to Scotsman on September 18, 1986. This second letter asserted the Department of Taxation's position that Scotsman was required to pay a 3.75 percent state sales tax on the monies it received for the sale of modular homes for the Tonopah Test Site.

Scotsman appealed the Department of Taxation's decision to the Nevada Tax Commission who refused Scotsman's request for relief. The Nevada Tax Commission ordered the revenue division of the Department of Taxation to determine the total amount of sales taxes, penalties, and interest due from Scotsman.

Scotsman initiated a suit for declaratory relief in the district court prior to an audit and deficiency determination by the Department of Taxation. Ruling on cross-motions for summary judgment, the district court held, as a matter of law, that Scotsman was liable to collect and pay a state sales tax for its sale of modular housing units used by the Department of Energy. This appeal followed.

## SUMMARY JUDGMENT

Under NRCP 56(c), summary judgment is appropriate only where there are no genuine issues of fact to be resolved and one party is entitled to judgment as a matter of law. Leven v. Wheatherstone Condominium Corp., 106 Nev. 307, 309, 791 P.2d 450, 451 (1990). Therefore, the issue herein asks whether

the district court was correct in ruling that there are no genuine issues of fact remaining in this action, and that as a matter of law, the collection of state sales taxes in this case is not proscribed by the Supremacy Clause of the United States Constitution.

## THE SUPREMACY CLAUSE AND STATE TAXATION

In United States v. New Mexico, 455 U.S. 720 (1982), the United States Supreme Court was asked to decide whether federal contractors—acting for the Atomic Energy Commission and its successor, the Department of Energy—were subject to the State of New Mexico's sales and use taxes. Justice Blackmun, speaking for a unanimous Court, reevaluated some of the United States Supreme Court's earlier cases and admitted that the law concerning state taxation of federal government contractors "has been marked from the beginning by inconsistent decisions and excessively delicate distinctions." *Id.* at 730. Justice Blackmun's characterization of "the confusing nature" of the law in this area is, in our opinion, appropriate. *Id.* at 733. Accordingly, we offer the following background analysis.

### A.   The Supremacy Clause.

"[T]he power to tax involves the power to destroy." McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 431 (1819). Thus, under the Supremacy Clause of the United States Constitution, a state cannot impose a tax *directly* upon the federal government. However, it is not always easy to decide when the tax falls upon the federal government, or upon some other entity closely associated with the United States, especially in light of the subtle distinctions drawn by the United States Supreme Court between state *sales* and *use* taxes.[1]

### B.   State Sales Taxes.

In Alabama v. King & Boozer, 314 U.S. 1 (1941), the United States Supreme Court upheld an Alabama *sales tax* imposed on materials purchased by cost-plus-fixed-fee contractors.[2] King and

---

[1]An understanding of the distinction between a state sales tax and a state use tax is critical in this analysis. In Nevada, a state *sales tax* is imposed upon the retail *sale* of tangible personal property. *See* NRS 372.105. On the other hand, Nevada's *use tax* imposes an excise tax *on the storage, use, or other consumption* of tangible personal property. *See* NRS 372.185.

[2]Generally, under a cost-plus-fixed-fee contract, the federal government pays all of a contractor's overhead expenses and provides facilities to the contractor for the contractor's use. These facilities include such things as laboratories, offices, or factories, and are used by the contractor to provide a

Boozer were to supply materials to the United States government to be purchased upon the government's credit. Thereafter, the government was to reimburse the contractors on delivery and acceptance of the materials. The Supreme Court held that under the facts of the case, King and Boozer were subject to Alabama's *sales tax* because, in effect, King and Boozer purchased the materials before they resold them to the government. The Court reasoned:

> [T]he contractors were to purchase in their own names and on their own credit all the materials required, unless the Government should elect to furnish them; that the Government was not to be bound by their purchase contracts, but was obligated only to reimburse the contractors when the materials purchased should be delivered, inspected and accepted at the site.

*Id.* at 11. The Court concluded that the state sales tax was appropriate even though the costs of the tax would eventually be passed on to the United States.

However, in a later ruling styled Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110 (1954), the Court reasserted its position that a state could not impose its sales tax directly upon the federal government. In *Kern-Limerick,* a contractor acted as a purchasing agent under a cost-plus-fixed-fee contract to supply tractors to the United States Navy. The state of Arkansas attempted to place a *sales tax* upon the sale of the tractors, asserting the sale to be to the contractor, rather than to the federal government.

The United States Supreme Court held that Arkansas could not constitutionally require the federal contractor in *Kern-Limerick* to pay the sales tax in question because the "legal incidence" of the tax did not fall upon the contractor. Rather, it fell directly upon the United States in violation of the Supremacy Clause because: (1) the federal government's contractor identified itself as a federal procurement agent to the tractor retailers; (2) the title to the tractors passed directly from the vendor to the federal government, not to the contractor; (3) the purchase orders declared that the purchase was made by the federal government and that the federal government was liable on the sale; and (4) the contractor was not directly liable to the vendor for payment of the purchase price. *Id.* at 119-122.

---

service or product to the federal government. In return, the federal government pays the contractor a fixed fee for the contractor's services. *See, e.g., United States v. New Mexico,* 455 U.S. at 722-726.

## C. State Use Taxes.

As previously noted, under federal government cost-plus-fixed-fee contracts, after contractors purchase materials and production equipment on behalf of the United States, the United States will sometimes turn the materials and production equipment back to the contractor for the contractor's *use*. The contractor will then manufacture items for the government under the contract.

For example, in United States v. Boyd, 378 U.S. 39 (1964), Union Carbide and H. K. Ferguson Company sued the state of Tennessee to recover sales *and* use taxes paid as a result of a cost-plus-fixed-fee contract with the Atomic Energy Commission. The United States Supreme Court upheld the lower court's conclusion that Union Carbide and H. K. Ferguson were agents of the Atomic Energy Commission and therefore immune to state sales tax for property purchased on behalf of the United States. However, the Court further ruled that Union Carbide and H. K. Ferguson could nonetheless be taxed for their *use* of the same property because the use of the property was not for the sole benefit of the government, but was also for the contractor's commercial gain. As such, the contractor's use of the property *was a separate taxable activity even if the economic incidence of the tax was eventually borne by the United States. Id.* at 43-48.

Therefore, after *Boyd,* unless a contractor was an "instrumentalit[y] of the United States," the contractor did not partake of the United State's immunity from state *use taxes.*[3] *Id.*

### D. *United States v. New Mexico.*

The "instrumentality of the United States" analysis used in *Boyd* to determine the constitutionality of a state imposed use tax was rephrased in *United States v. New Mexico,* 455 U.S. 720 (1982), where the Supreme Court held that unless a contractor is a "constituent part" of the United States, they are not cloaked in the federal government's immunity from state *use taxes. Id.* at 741-742.

The constituent part analysis utilized by the Court considered whether: (1) the contractors were privately owned corporations;

---

[3]*But see* Livingston v. United States, 364 U.S. 281 (1960), where the United States Supreme Court ruled that a contractor who used federal government property to provide a service to the United States was not subject to a state use tax, even though the contractor was not incorporated into the federal government, because the contractor's total remuneration under the contract was only one dollar and the contractor otherwise had no hope of gain by using the government's facilities. *Livingston* indicates that unless the contractor gains or can hope to gain from using the federal property, a state may not impose a use tax.

(2) the federal government ran the contractors' day-to-day operations; and (3) the government had an ownership interest in the contractors' operations. *Id.* at 739-740.

However, it must be remembered that the *United States v. New Mexico* "constituent part" analysis was only applied to New Mexico's use tax, and not to its sales tax. The Supreme Court indicated as much when it stated:

> In the case of *sales* tax . . . it is arguable that an entity serving as a federal procurement agent can be so closely associated with the Government, and so lack an independent role in the purchase, as to make the sale—in both a real and a symbolic sense—a sale to the United States, *even though the purchasing agent has not otherwise been incorporated into the Government structure.*

*Id.* at 742 (emphasis added). Accordingly, the United States Supreme Court applied the *Kern-Limerick* analysis to determine if New Mexico's *sales* tax was constitutionally applied to the federal contractors in that case. *Id.*

In synthesizing these cases, we conclude that the United States Supreme Court requires a "constituent part" analysis to determine the constitutionality of a state imposed *use* tax upon a federal contractor, while the constitutionality of a state *sales* tax imposed upon the same contractor should be considered under the *Kern-Limerick* "legal incidence" analysis.

## THE ANALYSIS USED BY THE DISTRICT COURT

The district court below failed to recognize the dual analytical approach utilized by the United States Supreme Court in *United States v. New Mexico*. The district court found that:

> Scotsman [was] clearly a "retailer of tangible personal property" and not a construction contractor subject to *use tax*.

(Emphasis added.) Thereafter, the district court below concluded that "[u]nder *United States v. New Mexico*, . . . there [was] no constitutional impediment to the imposition of [a] *sales tax* to the transactions at issue." (Emphasis added.) Unfortunately, the district court came to this conclusion by applying the *United States v. New Mexico* "constituent part" analysis for a *use tax*. The district court reasoned:

> The contract [was] between REECo and Scotsman; the United States [was] not a party. Both REECo and Scotsman are privately owned businesses operated for profit. The

government does not run either REECo's or Scotsman's day-to-day operations or even have any ownership interest in either company.

The district court erred. Since a sales tax was at issue, the district court should have applied the *Kern-Limerick* "legal incidence" analysis to the facts to determine if the imposition of the sales tax in this case violated the Supremacy Clause of the United States Constitution.[4]

## CONCLUSION

To reiterate the Court's analysis in *United States v. New Mexico,* it is possible that REECo was so closely associated with the federal government, and so lacked an independent role in the purchase of the modular homes, as to make the sale—in both a real and a symbolic sense—a sale to the United States, even though REECo is not otherwise incorporated into the federal government. *Id.* at 742. Therefore, we conclude that the district court erred when it employed the "constituent part" analysis of *United States v. New Mexico* to determine, as a matter of law, if Nevada could constitutionally impose its sales tax upon Scotsman's sale of the modular homes installed at the Tonopah Test Site. We reverse the district court's grant of summary judgment and remand for entry of summary judgment in favor of Scotsman.

---

[4]We should note, at this juncture, NRS 374.345 which says:

> The taxes imposed under this chapter apply to the *sale to* and the storage, use or other consumption in this state of tangible personal property by a contractor for a governmental, religious or charitable entity which is otherwise exempted from the tax, unless the contractor is a constituent part of that entity.

(Emphasis added.) Under this statute, if property *is sold to a federal contractor,* the contractor must be a constituent part of the United States to avoid a state sales tax. However, again, the threshold issue asks whether the sale is to the contractor or the United States. If, under a *Kern-Limerick* analysis, the sale is not to the federal contractor, but is to the United States in both a real and symbolic sense, a tax cannot be imposed upon the federal government under the Supremacy Clause. *United States v. New Mexico,* 455 U.S. at 742.