THE STATE OF NEVADA, THE NEVADA DEPARTMENT OF TAXATION, AND THE NEVADA TAX COMMIS-SION, APPELLANTS, *v.* KELLY-RYAN, INC., A WASHINGTON CORPORATION, RESPONDENT.

No. 24421

March 30, 1994

871 P.2d 331

*Frankie Sue Del Papa,* Attorney General, and *John S. Bartlett,* Sr. Deputy Attorney General, Carson City, for Appellants.

*Guild, Russell, Morgan, Gallagher & Fuller,* Reno, for Respondent.

## OPINION

*Per Curiam:*

### FACTS

In 1987, Reynolds Electrical and Engineering Company, Inc. ("REEco") was acting as a prime contracting agent of the United States Government/Department of Energy. In this capacity, REEco solicited bids for the construction of a modular housing complex on the Tonopah Test Range in Nye County, Nevada. The construction site was located on federal land.

REEco sent a bid request to respondent Kelly-Ryan, Inc. ("Kelly-Ryan"), a Washington State general contractor. Before submitting its bid, Kelly-Ryan wrote a letter to the Nevada Department of Taxation seeking advice on the state taxation consequences of contracting with REEco and the federal government. Kelly-Ryan presented three different contracting scenarios. In its first inquiry, Kelly-Ryan asked about the tax consequences if it purchased the modular housing units from an out-of-state manufacturer. The Nevada Department of Taxation responded by advising Kelly-Ryan that under such an arrangement, it would have to pay a use tax on the entire invoice price of the modular housing units purchased out of state.

Kelly-Ryan submitted a bid and later won the contracting rights to build the complex at the test range. On July 7, 1987, Kelly-Ryan signed a contract with REEco. The agreement called for the construction of seventeen buildings consisting of 500 sleeping rooms. Essentially, Kelly-Ryan was to be paid a flat fee of $14,210,000.00

In performance of its contract obligations with REEco, Kelly-Ryan entered into a subcontract in Washington State with American Modular Systems, Inc. ("American Modular"). American Modular manufactured and sold housing units to Kelly-Ryan in Washington. Kelly-Ryan then transported these units to Nevada for further assembly and installation.

Over the course of the next two years, Kelly-Ryan made several purchases from American Modular totaling $8,656,830.00. In accordance with Nevada use tax laws and relying on the advice it had received from the Nevada Department of Taxation, Kelly-Ryan submitted quarterly use tax payments to the State of Nevada. The entire amount of use tax Kelly-Ryan remitted equalled $511,606.83 or six percent of the $8,656,830.00 amount paid to American Modular.[1]

---

[1]This six percent taxation amount was adjusted for collection allowances and other credits.

In 1991, this court decided Scotsman Mfg. v. State, Dep't of Taxation, 107 Nev. 127, 808 P.2d 517 (1991), *cert. denied*, ...... U.S. ......, 112 S.Ct. 1184 (1992) (*"Scotsman I"*). In *Scotsman I,* we held that it was unconstitutional to impose a Nevada *sales tax* on the direct sale of modular housing units from a manufacturer to an instrumentality of the United States Government. In such a transaction, the sales tax fell directly upon the federal government in violation of the Supremacy Clause of the United States Constitution. *Scotsman I,* 107 Nev. at 134, 808 P.2d at 521.

Relying upon the *Scotsman I* decision, Kelly-Ryan filed for a use tax refund from the Nevada Department of Taxation on December 31, 1991. The Nevada Department of Taxation rejected the claim by letter on January 17, 1992. Kelly-Ryan's petition for judicial review of the department's decision was later rejected by the district court.

On February 20, 1992, Kelly-Ryan filed a declaratory action against appellants the State of Nevada, the Nevada Department of Taxation, and the Nevada Tax Commission (collectively "the State") in the First Judicial District Court. Kelly-Ryan alleged that it was a retailer of modular housing units to an instrumentality of the United States Government (REEco). Thus, consistent with *Scotsman I,* Nevada taxation of that particular transaction was unconstitutional.

Both the State and Kelly-Ryan moved for summary judgment. Kelly-Ryan's argument rested upon what it asserted was the controlling authority of *Scotsman I.* The State responded by claiming that Kelly-Ryan was not a retailer of tangible personal property. Rather, Kelly-Ryan was a construction contractor subject to a use tax on all tangible personal property used while performing its contract with REEco. The State claimed that the use tax was directly imposed upon Kelly-Ryan and not an instrumentality of the federal government. Therefore, federal tax immunity did not apply.

Alternatively, the State argued that Kelly-Ryan's request for a refund was procedurally barred by NRS 372.635(1), which requires a taxpayer to request a refund within three years after the close of the tax payment period. The State pointed out that Kelly-Ryan had paid $426,454.96 in quarterly use taxes more than three years before it filed for an administrative refund with the Nevada Department of Taxation on December 31, 1991.

On March 3, 1993, the district court partially ruled in Kelly-Ryan's favor. The court examined the contracts between the Department of Energy, REEco, and Kelly-Ryan and determined that Kelly-Ryan was acting as a retailer of tangible personal property to the federal government. Thus, the use taxes paid, in reality, were unconstitutional sales taxes. Kelly-Ryan had sold

modular housing units to REEco, a taxable transaction no different from the one found unconstitutional in *Scotsman I.*

The district court deferred ruling on the State's procedural limitations argument until this court delivered its opinion in State, Dep't of Taxation v. Scotsman Mfg., 109 Nev. 252, 849 P.2d 317 (1993) (*"Scotsman II"*).[2] Within the particular factual context of *Scotsman II,* we concluded that a statute of limitations could not bar a taxpayer from obtaining a refund of sales taxes unconstitutionally assessed against the federal government. *Id.*

On April 2, 1993, the district court entered final judgment in favor of Kelly-Ryan. In light of its holding that Kelly-Ryan was unconstitutionally taxed, the district court concluded that the statute of limitations could not bar the State from issuing a refund. Accordingly, the district court ordered the State to refund the $511,606.83 in use taxes paid by Kelly-Ryan.

The State appeals and claims that the district court erred by misinterpreting *Scotsman I* and Nevada's taxation laws. It argues that the tax at issue was a use tax directly imposed upon Kelly-Ryan and not an unconstitutionally collected sales tax. We agree and accordingly reverse the district court's decision.

## DISCUSSION

Under Nevada law, sales and use taxes are complementary, yet mutually exclusive. Sales tax applies to the sale of tangible personal property within the state. NRS 372.105. Conversely, use tax applies to the use, storage, and consumption of tangible personal property within the state. NRS 372.185. The amount of use tax equals a percentage of the invoice price paid for goods used within Nevada.[3] The use tax complements the sales tax so that all tangible personal property sold or utilized in Nevada is subject to taxation. Use taxation is also a way for Nevada to tax transactions outside the state that would otherwise escape sales taxation. The incidence of Nevada's use tax falls *directly* upon the party that makes the out-of-state purchase and uses the property within the state.

It is well-settled under the Supremacy Clause of the United States Constitution that an individual state cannot impose a tax *directly* upon the federal government. United States v. New Mexico, 455 U.S. 720, 733 (1982); *Scotsman I,* 107 Nev. at 130, 808 P.2d at 519. However, a state is not prohibited from imposing taxes directly upon a private entity that is contracting with the

---

[2]*Scotsman II* involved the same underlying dispute as *Scotsman I.*

[3]At the time of this dispute, the use and sales tax rates in Nye County equaled six percent of invoice.

federal government. In examining the constitutionality of state taxation under the Supremacy Clause, the dispositive question is whether the incidence of taxation falls directly upon the federal government or upon the private contracting entity.

In the instant appeal, the answer to this fundamental question hinges upon another inquiry: Was Kelly-Ryan subject to a Nevada use tax or a Nevada sales tax? If Kelly-Ryan was merely using modular housing units to obtain a profit under a commercial construction contract, then the applicable tax was a use tax. Consequently, the taxable event was defined by Kelly-Ryan's purchase of modular housing units from American Modular in Washington State and the use of those products in Nevada. Under such a scenario, Kelly-Ryan would have the direct taxation burden, and thus, the tax would be constitutional. *See* United States v. Boyd, 378 U.S. 39, 44 (1964) (state use taxes imposed on private contractors were constitutional even where contractors were using government property in performing government contracts).

On the other hand, if Kelly-Ryan was only selling tangible personal property directly to REEco, then the district court properly ruled that the State imposed an unconstitutional sales tax on that particular transaction. This point is specifically illustrated by our opinion in *Scotsman I.*

Due to the import of *Scotsman I* to the merits of this appeal, an extended examination of that decision is warranted. In *Scotsman I,* Scotsman Manufacturing Company, Inc. entered into a subcontract with REEco to supply modular housing units for construction on the Tonopah Test Range. Scotsman Manufacturing was a California corporation that manufactured modular housing units. Throughout the course of its dealings on the test range, Scotsman Manufacturing collected a *sales tax* from REEco equalling a percentage of the modular housing sales price. It paid these amounts to the Nevada Department of Taxation. Scotsman Manufacturing later challenged the constitutionality of the tax in district court. The district court entered summary judgment in favor of the State of Nevada, ruling that REEco was not a "constituent part" of the United States and therefore the tax was not directly imposed on the federal government. *Scotsman I,* 107 Nev. at 128-29, 808 P.2d at 518.

We reversed on appeal, reasoning that the district court erred by examining the sales tax under the wrong constitutional framework. The district court improperly utilized the "constituent part" test, which only applies when the court is considering the constitutionality of a *use tax. Id.* at 133, 808 P.2d at 521. This court recognized that the tax at issue was a *sales tax.* Scotsman Manufacturing was a retailer of tangible personal property, selling modular housing units as a commodity to REEco. Therefore,

the district court should have applied "legal incidence" analysis to determine whether the sales taxation burden fell directly upon an instrumentality of the federal government. *Id.*

We described the "legal incidence" standard as requiring examination of the following factors: (1) whether the prime contractor (REEco) identified itself as a procurement agent of the federal government; (2) whether title to the property sold passed directly to the United States; (3) whether the purchase orders declared that the federal government was liable on the sale; and (4) whether the prime contractor (REEco) was not directly liable to the manufacturer for the payment of the purchase price. *Id.* at 131, 808 P.2d at 519-20 (citing Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, 119-22 (1954)). In application, it became clear that REEco was an instrumentality of the federal government purchasing modular housing units directly from Scotsman Manufacturing. Hence, taxation of that particular transaction was prohibited by the Supremacy Clause of the United States Constitution. The incidence of sales taxation fell directly upon the United States Government. *Scotsman I,* 107 Nev. at 134, 808 P.2d at 521.

Even though Kelly-Ryan did not manufacture the housing units in the instant appeal, it claims that it was selling tangible personal property to REEco. Thus, Kelly-Ryan urges that the taxable transaction at issue is no different from the transaction found to be unconstitutional in *Scotsman I.*

Kelly-Ryan supports this argument by asserting that the contract in *Scotsman I* and the contractual arrangements in the present case are, for all intents and purposes, identical. Kelly-Ryan attaches the Scotsman Manufacturing subcontract with REEco as an appendix to its answering brief. Kelly-Ryan then cites boilerplate language from that subcontract and concludes that the document is identical to the REEco/Kelly-Ryan contract in the case at bar.

Not only is this an improper reference to documentation outside the record, but Kelly-Ryan's substantive conclusion is flawed. NRAP 28(e) (reference to pages in appendix must be accompanied by reference to pertinent pages in record on appeal); *see also* Carson Ready Mix v. First Nat'l Bk., 97 Nev. 474, 476, 635 P.2d 276, 277 (1981) (court will not consider evidence not appearing in the record on appeal). The Scotsman Manufacturing subcontract was a purchase agreement between a manufacturer of modular housing and the federal government. The federal government paid Scotsman Manufacturing on a per unit basis. Scotsman Manufacturing's profit was derived from, and built into, the unit purchase price.

The same cannot be said about the Kelly-Ryan/REEco contract. Kelly-Ryan was paid a flat fee for the construction of a modular housing complex. The amount of compensation listed in the contract does not depend upon any type of unit pricing. In fact, the price of an individual housing unit is not mentioned anywhere in the document. Kelly-Ryan did not derive its profit from the *sale* of a product that it manufactured. Rather, Kelly-Ryan obtained its profit from *using* housing units that it purchased from American Modular to complete its construction contract with REEco. *See* Maecon, Inc. v. State, Dep't of Taxation, 104 Nev. 487, 761 P.2d 411 (1988) (general engineering subcontractor was subject to Nevada use tax for use of materials in performance of its contract with the United States Government, Department of the Navy).

In light of this fact, Nevada's taxation laws clearly provided that Kelly-Ryan was subject to a use tax when it purchased modular housing units from American Modular in Washington State. Under NRS 372.185, a use tax is imposed upon the storage, use or other consumption in this state of tangible personal property. The tax applies to all property which was acquired out of state in a transaction that would have been a taxable sale if it had occurred within this state. Moreover, under NRS 372.225, it is "presumed that tangible personal property sold by any person for delivery in this state is sold for storage, use or other consumption in this state until the contrary is established."

Complementing these statutes, NAC 372.200(1) subjects all construction contractors to a use tax for the use of tangible personal property in improving real property:

> A construction contractor is the consumer of *all* the tangible personal property purchased *for use in improving real property pursuant to a construction contract* for improvement to real property and the tax applies to the total sales price of the property to the contractor.

(Emphasis added.)

At the time of the subject dispute, NAC 372.190 defined these terms with the following pertinent language:

372.190   Construction contractors: Definitions.   For the purposes of NAC 372.190 to 372.210, inclusive:

1.   *"Construction contractor"* means any person who acts solely in his professional capacity or through others to construct, alter, repair, add to, remodel or otherwise improve any real property and the term:

(a) Includes a subcontractor, an interior decorator and a specialty contractor.

(b) Does not include:

. . .

(4) A *manufacturer* of:

(I) Modular homes;

(II) Sectionalized housing;

(III) Prefabricated homes; or

(IV) Any other factory-built home or unit, who joins, installs or affixes the prefabricated unit to the real property.

2. "*Construction contract* for improvement to real property" means a contract for erecting, constructing or *affixing a structure* or other improvement on or to real property . . . .

(Emphasis added.)

In the instant case, we conclude that Kelly-Ryan was clearly acting as a construction contractor improving real property and was therefore required to pay a use tax. First, the definition of a construction contract for the improvement of real property includes affixing a structure or other improvement on or to real property. This is precisely what Kelly-Ryan was doing on the Tonopah Test Range. Second, it is undisputed that Kelly-Ryan was not a *manufacturer* of the modular housing units. It purchased such units from American Modular in Washington. Thus, Kelly-Ryan did not fall within the specific exclusion to the definition of a "construction contractor" appearing above in NAC 372.190(1)(b)(4).

Third, as early as May 26, 1987, the Nevada Department of Taxation informed Kelly-Ryan that it would have to pay use tax on modular housing purchases it made from an out-of-state vendor in fulfilling its contract with REEco. Fourth, Kelly-Ryan registered as a general construction contractor and not as a retailer when it first started doing business in Nevada. Lastly, Kelly-Ryan remitted two years of quarterly use taxes on use taxation forms. It was not charging or remitting sales tax.

Kelly-Ryan tries to combat this analysis with an argument that glosses over a plain reading of the statutes and regulations. Kelly-Ryan claims that it falls within the exclusion of NAC 372.190(1)(b)(4) even though the language only applies to "manufacturers" of modular housing. It asserts that the spirit of the exclusion includes its contractual duties with REEco and that such a hyper-technical reading of the regulation cannot support circumvention of federal tax immunity.[4]

_____

[4]Kelly-Ryan cites this court's opinion in Nevada Tax Comm'n v. Harker, 101 Nev. 229, 232, 699 P.2d 112, 114 (1985), for this general proposition. There, the court held that a contractor could not be charged a use tax because it did not exercise complete ownership over the property used in fulfilling its government contract. The case hinged upon NRS 372.100, which required "ownership" before a use tax applied. NRS 372.100 was repealed in November 1986 along with other changes to Nevada use tax law. 1985 Stat. Nev. ch. 513, sec. 3, p. 1563.

The change in the law drastically undermines the holding in *Harker*.

Kelly-Ryan's argument lacks merit. The United States Supreme Court in recent opinions has held that a state can in fact circumvent federal taxation immunity by shifting the direct taxation burden away from the government and imposing it directly upon the contractor in the form of a use tax. *See, e.g.,* United States v. California, ...... U.S. ......, ......, 113 S.Ct. 1784, 1788 (1993); Washington v. United States, 460 U.S. 536 (1983) (Washington tax scheme that shifted sales and use tax burdens to contractor when contractor dealt with federal government was not an unconstitutional circumvention of federal tax immunity). A plain reading of the regulations and the statutes at issue leads to the conclusion that this is precisely what is contemplated by Nevada's taxation laws.

In light of the foregoing, we conclude that Kelly-Ryan properly paid use taxes for the utilization of modular housing units that it had purchased out of state from American Modular. Kelly-Ryan was not a manufacturer of modular housing merely selling a product to an instrumentality of the federal government. This conclusion removes this dispute from the purview of *Scotsman I* and has a profound impact on the substantive constitutional analysis necessary for resolving this appeal. Stated differently, finding that Kelly-Ryan was subject to Nevada use taxes defines the taxable event to be constitutionally examined. Contrary to the district court's decision, the taxable event was not the transactions between Kelly-Ryan and REEco, but rather, the transactions between Kelly-Ryan and American Modular. *See Scotsman I,* 107 Nev. at 130, 808 P.2d at 519 (court recognizing critical difference between constitutional analysis of sales and use taxes).

As we have indicated, a state may constitutionally impose a use tax on a contractor that uses tangible personal property in the performance of a contract with the federal government. *See, e.g., New Mexico,* 455 U.S. at 739. It makes no difference whether title to such property is vested in the United States or the non-agent contractor. *Boyd,* 378 U.S. at 44. In addition, it is "constitutionally irrelevant" that the United States shoulders the entire economic tax burden by reimbursing the non-agent contractor for expenditures. *California,* ...... U.S. at ......, 113 S.Ct. at 1788. The only relevant determination is whether the tax burden falls directly upon the government. *Id.*

---

Under the current status of Nevada tax law, complete ownership of property is no longer required before the state can impose a use tax on an entity contracting with the federal government. *See Maecon,* 104 Nev. at 492, 761 P.2d at 413-14 (contractor could be charged tax for use of construction materials, even where title to materials vested in the Navy upon arrival at the job site).

Application of these principles to the instant appeal is succinctly illustrated by federal circuit court precedent almost directly on point. In In Re Howell, 731 F.2d 624 (9th Cir.), *cert. denied*, 496 U.S. 933 (1984), Howell Electric Company ("Howell") was a California electrical contractor doing business with the United States. Under California law, Howell was subject to sales and use taxes on materials that it purchased for fulfilling its government contract. Howell went into bankruptcy and challenged the constitutionality of the taxes in bankruptcy court. In an eventual appeal to the Ninth Circuit Court of Appeals, Howell claimed that the taxes were impermissible because they fell directly upon the federal government.

The court of appeals disagreed and upheld the taxes as being constitutional. *In Re Howell,* 731 F.2d at 628. The court reasoned that the taxable transaction was not the sale of materials to the government, but rather, the sales transaction between Howell and its supplier:

> The cases cited by Howell [footnote omitted] to demonstrate instances in which taxes have been struck down as direct taxes on the United States are inapposite. Each of those cases involved the taxation of a direct transaction between the United States and some instrumentality. In each instance, the court found that the "legal incidence" of the tax fell upon the United States and thus was impermissible. *Here, the transaction between Howell and the United States is not taxed at all; the tax is imposed on the transfer of property from a supplier to Howell.*

*Id.* (emphasis added).

As evidenced by *Howell* and the other above-noted precedent, state use taxes directly imposed upon the entity dealing with the federal government are constitutional. The only exception to this proposition is where the contractor subject to the use tax is a "constituent part" of the federal government. *Scotsman I,* 107 Nev. at 132-33, 808 P.2d at 520.

Kelly-Ryan was not a constituent part of the United States when it purchased modular housing units from American Modular. This fact is not in dispute. Kelly-Ryan is a privately owned corporation; the federal government does not run Kelly-Ryan's day-to-day operations, nor does the federal government have an ownership interest in Kelly-Ryan.[5]

---

[5]The "constituent part" test, as described by the Supreme Court in *New Mexico,* 455 U.S. at 739-40, only applies when a court is examining the

## CONCLUSION

In light of the foregoing, we conclude that the district court erred in its interpretation and application of Nevada tax law and *Scotsman I.* Kelly-Ryan fell squarely within the definition of a construction contractor and was required to pay a Nevada use tax on modular housing unit purchases made from an out-of-state vendor. Thus, the incidence of Nevada taxation fell upon Kelly-Ryan and not the federal government. Accordingly, we reverse the district court's decision and remand with instructions that judgment be entered in favor of the State.

Having disposed of this appeal on substantive grounds, we need not address the merits of the State's procedural argument.

constitutionality of a *use tax.* Thereunder, the incidence of use taxation does not fall upon a constituent part of the federal government where (1) the contractor is a privately owned corporation; (2) the federal government does not run the contractors' day-to-day activity; and (3) the government has no ownership interest in the contractors' operations. *New Mexico,* 455 U.S. at 739-40; *see also Scotsman I,* 107 Nev. at 132-33, 808 P.2d at 520.