**133 Nev., Advance Opinion 49**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| SOUTHERN CALIFORNIA EDISON,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA<br>DEPARTMENT OF TAXATION,<br>Respondent. | No. 67497<br><br>**FILED**<br><br>JUL 27 2017 |



Appeal from a final judgment in an action to recover previously paid use taxes. First Judicial District Court, Carson City; James Todd Russell, Judge.

*Affirmed.*

Norman J. Azevedo, Carson City; Jones Day and Charles C. Read, Los Angeles, California,
for Appellant.

Adam Paul Laxalt, Attorney General, Lawrence J.C. VanDyke, Solicitor General, and Andrea Nichols, Senior Deputy Attorney General, Carson City,
for Respondent.

---

BEFORE THE COURT EN BANC.[1]

---

[1]The Honorable Lidia S. Stiglich, Justice, did not participate in the decision of this matter.

*OPINION*

By the Court, HARDESTY, J.:

In *Sierra Pacific Power Co. v. State Department of Taxation*, we recognized that "[v]iolations of the dormant Commerce Clause are remedied by compensating for the negative impact to the claimant as measured by the unfair advantage provided to the claimant's competitors." 130 Nev., Adv. Op. 93, 338 P.3d 1244, 1246 (2014). We concluded there that, as no competitor was favored by any unfair tax advantage, no tax refund was due. *Id.* Here, faced with a similar dormant Commerce Clause issue, we consider whether appellant Southern California Edison (Edison) is due a refund of use tax paid to Nevada because it made the requisite showing of favored competitors. We also consider whether Edison alternatively is owed a tax credit in an amount equal to the transaction privilege tax (TPT) levied by Arizona. We conclude that Edison is not owed a refund because Edison has not demonstrated the existence of substantially similar entities that gained a competitive advantage because of the unconstitutional tax. We also conclude that Edison is not due a credit because the TPT does not qualify as a sales tax paid by Edison within the meaning of NAC 372.055.

*FACTS AND PROCEDURAL HISTORY*

Edison is an electrical utility company serving approximately 14 million customers. During all times relevant to this litigation, it owned a majority interest in Mohave Generation Station (Mohave),[2] a coal-fired power plant in Clark County. Mohave bought coal exclusively from Peabody Western Coal Company (Peabody), which extracted the coal in

---

[2]Mohave closed in 2005.

 

Arizona. The coal was ground up, turned into a slurry mixture, and transported across state lines to Mohave through a 273-mile pipeline.

Respondent State of Nevada Department of Taxation (the Department) levied a use tax on the coal Edison purchased from Peabody, pursuant to NRS 372.185. Edison paid $23,896,668 in use tax for transactions with Peabody between March 1998 and December 2000. During this time, the state of Arizona levied a TPT on Peabody for the coal's production in Arizona totaling $9,703,087.52, which was included in the overall price Edison paid to Peabody.

Pursuant to NRS 372.270, proceeds of minerals mined in Nevada are exempt from the use tax but subject to a net proceeds tax under NRS Chapter 362. Alleging that exempting minerals mined in Nevada from the use tax while imposing the use tax on minerals mined outside the state unconstitutionally discriminates against interstate commerce and violates the dormant Commerce Clause, Edison filed a claim with the Department for a refund of the use tax it paid between March 1998 and December 2000.[3] The Department denied the claim, and Edison filed an appeal with the Nevada Tax Commission. The Commission also denied the requested refund.[4]

_____

[3]Edison also filed claims for refunds of the use tax paid for the periods January 2001 through September 2003 and October 2003 through December 2005. This appeal only involves Edison's claim for a refund for the period of March 1998 and December 2000. But the parties have agreed that the final judgment in this proceeding will be conclusive as to the other two claims.

[4]The Commission originally granted the request in a closed meeting, and the district court affirmed the Commission's decision. This court reversed based on a violation of Nevada's Open Meeting Law. *Chanos v. Nev. Tax Comm'n*, 124 Nev. 232, 244, 181 P.3d 675, 683 (2008).

Edison then filed an independent action in the district court and sought a trial de novo seeking a refund of the taxes it paid.[5] Edison did not seek prospective relief from its future obligation to pay use tax. After conducting a bench trial but before entering its final decision, the district court stayed the matter pending this court's ruling in *Sierra Pacific* because the cases presented many of the same legal and factual issues. Two weeks after this court published its opinion in *Sierra Pacific*, the district court issued its decision in which it found that, while the negative implications of the dormant Commerce Clause rendered NRS 372.270 unconstitutional,[6] Edison was not entitled to a refund because it

---

[5]After Edison filed its complaint, the Department moved for dismissal, arguing that the proper method for challenging the Commission's denial was through a petition for judicial review. The district court agreed and dismissed Edison's complaint. Edison then petitioned this court for a writ of mandamus, which we granted after determining that the Department was "judicially estopped from asserting that a petition for judicial review is the sole remedy because it specifically told Edison that trial de novo would be available if Edison was unhappy with the Commission's decision." *S. Cal. Edison v. First Judicial Dist. Court*, 127 Nev. 276, 279, 255 P.3d 231, 233 (2011).

[6]The district court determined that NRS 372.270 was unconstitutional under the dormant Commerce Clause based on its interpretation of our *Sierra Pacific* decision. However, we did not speak to the constitutionality of NRS 372.270 in that decision. *Sierra Pac.*, 130 Nev., Adv. Op. 93, 338 P.3d at 1245-46. Rather, we accepted the district court's determination that the statute was unconstitutional because no party contested the court's decision on appeal. *Id.* Although the district court erroneously determined NRS 372.270 violates the dormant Commerce Clause based on *Sierra Pacific*, we nevertheless uphold the district court's decision denying Edison's request for a tax refund. *Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) ("This court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason.").

did not have favored competitors that benefited from the discriminatory taxation scheme. The district court also denied Edison's other claims. Edison now appeals.

## DISCUSSION

Edison's primary arguments on appeal are: (1) NRS 372.185 (use tax) and NRS 372.270 (use tax exemption) can be harmonized to bring NRS 372.270 within constitutional parameters, and, under its proposed construction, Edison is entitled to a refund because the use tax does not apply to its coal purchases; (2) if this court does not accept Edison's proposed construction, NRS 372.270 is impermissibly discriminatory under the dormant Commerce Clause and Edison made a showing of advantaged competitors caused by NRS 372.270, so it is entitled to a refund pursuant to *Sierra Pacific*; and (3) if this court decides that Edison is not owed a refund, Edison is entitled to a tax credit for the TPT Arizona levied on the coal's production.

*NRS 372.270 cannot be harmonized with NRS 372.185 to bring it within constitutional parameters*

Edison argues that NRS 372.270 is constitutional if it is interpreted in harmony with NRS 372.185. Edison further argues that, under its suggested interpretation, Edison's coal purchases from Peabody qualify for the exemption in NRS 372.270. Although we examined NRS 372.270 in *Sierra Pacific*, we did not consider the constitutionality of the statute because the parties did not challenge that determination by the district court. 130 Nev., Adv. Op. 93, 338 P.3d at 1245. While Edison also does not take issue with the district court's determination that NRS 372.270, if interpreted as applying to it, violates the dormant Commerce Clause, Edison asserts that NRS 372.270 does not apply to its use of Arizona coal here. This court reviews questions of statutory construction

SUPREME COURT
OF
NEVADA

(O) 1947A

5

de novo. *I. Cox Constr. Co. v. CH2 Invs., LLC*, 129 Nev. 139, 142, 296 P.3d 1202, 1203 (2013).

Nevada's use and sales tax statutory scheme is structured as follows:

> Under Nevada law, sales and use taxes are complementary, yet mutually exclusive. Sales tax applies to the sale of tangible personal property within the state. NRS 372.105. Conversely, use tax applies to the use, storage, and consumption of tangible personal property within the state. NRS 372.185. . . . The use tax complements the sales tax so that all tangible personal property sold or utilized in Nevada is subject to taxation. Use taxation is also a way for Nevada to tax transactions outside the state that would otherwise escape sales taxation. The incidence of Nevada's use tax falls *directly* upon the party that makes the out-of-state purchase and uses the property within the state.

*State, Dep't of Taxation v. Kelly-Ryan, Inc.*, 110 Nev. 276, 280, 871 P.2d 331, 334-35 (1994).

Thus, NRS 372.185 imposes a use tax "on the storage, use or other consumption in this State of tangible personal property purchased from any retailer" in an out-of-state transaction "that would have been a taxable sale if it had occurred within [Nevada]." NRS 372.270 exempts from the sales and use tax "the gross receipts from the sale of, and the storage, use or other consumption in this State of, the proceeds of mines which are subject to taxes levied pursuant to chapter 362 of NRS." NRS Chapter 362 provides for a distinct net proceeds tax on all mining operations within the state. *See, e.g.*, NRS 362.140.

One of Edison's expert witnesses explained at trial that the net proceeds tax has an effective rate of about one percent, whereas the

use tax has an effective rate of six or seven percent. Thus, according to this testimony, NRS 372.270's effect is to favor in-state mines over out-of-state mines.

However, Edison contends that NRS 372.185 and NRS 372.270 can be read in a way that avoids interstate discrimination.[7] "[W]hen the language of a statute admits of two constructions, one of which would render it constitutional and valid and the other unconstitutional and void, that construction should be adopted which will save the statute." *Ford v. State*, 127 Nev. 608, 619, 262 P.3d 1123, 1130 (2011) (quoting *Va. & Truckee R.R. Co. v. Henry*, 8 Nev. 165, 174 (1873)).

To harmonize the provisions, Edison points out that use tax is levied on all property that is "acquired out of state in a transaction that would have been a taxable sale" if it occurred in Nevada. NRS 372.185(2).

---

[7]The Nevada Constitution states:

> The legislature shall provide by law for a tax upon the net proceeds of all minerals, including oil, gas and other hydrocarbons, extracted in this state, at a rate not to exceed 5 percent of the net proceeds. No other tax may be imposed upon a mineral or its proceeds until the identity of the proceeds as such is lost.

Nev. Const. art. 10, § 5(1). Edison argues that the second sentence of this provision is not limited to minerals extracted in this state, so the imposition of the use tax on Edison is unconstitutional. We conclude that this argument is without merit because the second sentence must be read in harmony with the first sentence—no other tax may be imposed on minerals that are extracted in Nevada. *See Sierra Pac.*, 130 Nev., Adv. Op. 93, 338 P.3d at 1247 ("Article 10, Section 5 of the Nevada Constitution prevents the Department from imposing any additional taxes on minerals that are subject to NRS Chapter 362's net proceeds tax (minerals that are mined in Nevada) . . . .").

Edison argues that if the coal mine in Arizona was located in Nevada, the transaction would be exempt from sales tax pursuant to NRS 372.270 and thus not a "taxable sale." Under this reading, NRS 372.185 would not be implicated, and the use tax would not apply to minerals mined outside of Nevada. Such a reading of these statutes, Edison asserts, would treat out-of-state mines and minerals exactly the same as in-state mines and minerals for the purposes of NRS 372.270—all would be exempt from use and sales taxes.

However, the reading confuses the location of the mine with the location of the sale—Nevada-based sales of Arizona-mined coal are taxable in Nevada. Further, Edison's harmonization would also avoid net proceeds tax on its transactions with Peabody. Because Peabody mines in Arizona, the net proceeds tax does not apply. *See* NRS 362.110(1)(a) (providing that "[e]very person extracting any mineral in this State" must file an annual statement with the Department in order to determine the net proceeds tax owed). In *Sierra Pacific*, this court noted that "it is apparent that the Legislature originally enacted [NRS 372.270] to avoid taxing the proceeds of mines already subject to the net proceeds tax." 130 Nev., Adv. Op. 93, 338 P.3d at 1248. The Legislature did not intend for companies using mine proceeds to entirely avoid use, sales, *and* net proceeds taxation, however. Thus, Edison's construction causes an absurd result, and we decline to adopt its proposed construction. *See City Plan Dev., Inc. v. Office of Labor Comm'r*, 121 Nev. 419, 435, 117 P.3d 182, 192 (2005) ("When interpreting a statute, this court . . . seek[s] to avoid an interpretation that leads to an absurd result.").

*Edison does not have substantially similar favored competitors that benefited from the discriminatory taxation scheme*

Edison argues, alternatively, that if NRS 372.270 is not harmonized with NRS 372.185 consistent with its proposed construction, the district court's conclusion that NRS 372.270's tax exemption is unconstitutional under the dormant Commerce Clause should stand. Similarly, the Department does not dispute the district court's determination that NRS 372.270's tax exemption violates the dormant Commerce Clause. Thus, as in *Sierra Pacific*, "we . . . do not consider the lawfulness of the statute as a whole." *Sierra Pac.*, 130 Nev., Adv. Op. 93, 338 P.3d at 1245. Rather, we review the district court's decision in terms of the relief Edison sought at trial and seeks on appeal. The only remedy Edison requests is retrospective relief in the form of a full refund of the taxes it paid on the coal purchase.

Edison argues that it presented the district court with adequate evidence of favored competitors to entitle it to a full refund under *Sierra Pacific*.[8] The district court concluded that "[t]here are no

---

[8]Edison also argues that *Sierra Pacific* should be overturned because it misconstrues *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Department of Business Regulation of Florida*, 496 U.S. 18 (1990). Edison contends that *McKesson* uses the term "competitors" noneconomically (i.e., broadly as a synonym for an entity that gained an advantage under the unconstitutional tax plan regardless of economic competition), and that United States Supreme Court jurisprudence does not require actual discrimination to receive a remedy. We are not persuaded by Edison's argument.

We recognize that the Supreme Court of Alabama's decision in *Ex parte Surtees*, 6 So. 3d 1157, 1163 (Ala. 2008) (holding that a "favored competitor" need not be the "mirror image" of the taxpayer seeking a refund for dormant Commerce Clause violations), may be, but is not
*continued on next page...*

facts in the record to support a finding that [Edison], by paying use tax on its purchase of the coal slurry, is being discriminated against in comparison to a similarly situated taxpayer" and that "[Edison] did not pay any higher tax than did its competitors." "Where a question of fact has been determined by the trial court, this court will not reverse unless the judgment is clearly erroneous and not based on substantial evidence." *Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 377, 283 P.3d 250, 254 (2012) (internal quotations omitted).

"State courts have the duty of determining the appropriate relief for Commerce Clause violations, and, to satisfy due process requirements, courts must provide 'meaningful backward-looking relief' to correct taxes paid pursuant to an unconstitutional scheme." *Sierra Pac.*, 130 Nev., Adv. Op. 93, 338 P.3d at 1248 (quoting *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Regulation of Fla.*, 496 U.S. 18, 31 (1990)). Importantly, the injured party must demonstrate the existence of favored competitors—i.e., "competitor[s] who benefited from the discriminatory tax scheme"—for a monetary remedy to attach. *Id.* at

---

...*continued*

necessarily, inconsistent with our approach in *Sierra Pacific*. We nevertheless believe that *McKesson* and other dormant Commerce Clause remedy cases contemplate true economic competition. *See McKesson*, 496 U.S. at 48 (noting that the unconstitutional tax "placed petitioner at a relative disadvantage in the marketplace vis-à-vis competitors distributing preferred local products"); *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 279 (1997) (stating that if "the entities serve different markets, and would continue to do so even if the supposedly discriminatory burden were removed, eliminating the burden would not serve the dormant Commerce Clause's fundamental objective").

1249. Despite an assertion by the injured party that a favored competitor exists,

> we would have to answer the threshold question of whether the competitor is a "substantially similar entit[y]" before determining whether [the injured party] was entitled to a monetary remedy as a result of a dormant Commerce Clause violation. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298-99 (1997). For a dormant Commerce Clause violation to exist, the claimed discrimination must create a competitive advantage between the "substantially similar entities." *Id.* However, competitive markets are generally narrowly drawn. *See Gen. Motors*, 519 U.S. at 301-03 (concluding that natural gas marketers did not serve the same market as local distribution companies, even though similarly situated geographically); *Alaska v. Arctic Maid*, 366 U.S. 199, 204 (1961) (drawing a distinction between salmon caught and frozen in Alaska but canned somewhere else, and salmon freshly canned in Alaska).

*Sierra Pac.*, 130 Nev., Adv. Op. 93, 338 P.3d at 1249 n.7 (first alteration in original).

Based on this analysis, this court determined in *Sierra Pacific* that the appellants did not have substantially similar advantaged competitors because Nevada mines do not produce commercially viable qualities or quantities of coal, and thus, its competitors also had to purchase these products out of state and were subject to the use tax. *Id.* at 1249 & n.6. Therefore, because no coal-using competitor was favored under NRS 372.270, "the tax scheme did not actually discriminate against interstate commerce, [and] a refund—or any other remedy—[was] not necessary to satisfy due process." *Id.* at 1249.

Here, like in *Sierra Pacific*, the district court found, and the record reflects, that Edison does not compete against power companies that use coal mined in-state because there are not large enough coal deposits in Nevada to justify commercial operations. Edison does not dispute this finding and instead argues that geothermal, oil, and natural gas resources were mined in Nevada, that energy producers using these materials were favored under NRS 372.270, and that these competitors are substantially similar to coal energy producers. According to Edison, geothermal, oil, and natural gas power plants provide the same homogeneous commoditized output as coal power plants—electrical energy. Thus, it argues that in the electrical industry, all energy producers compete against each other regardless of the fuel source used.

However, we believe that determining the market based on outputs would lead to an overbroad market where competitors are not similar. Drawing the market in such a way would group coal electrical producers with natural gas, nuclear, wind, hydroelectric, solar, and geothermal. These production methods are not similar for the purposes of this dormant Commerce Clause analysis because they require varying inputs. Notably, the dormant Commerce Clause is only implicated in this case because of *the different tax rate that inputs are subject to*. The controversy here has nothing to do with the way that Nevada is taxing electrical energy; it has to do with the effective tax rate of mined coal.

Because Edison failed to demonstrate the existence of substantially similar advantaged competitors, and a violation of the dormant Commerce Clause requires that there be "a competitor who benefited from the discriminatory tax scheme for the injured party to merit a monetary remedy," we conclude that Edison is not entitled to any

refund of use tax paid. *Sierra Pac.*, 130 Nev., Adv. Op. 93, 338 P.3d at 1249.[9]

*Edison is not entitled to a tax credit based on the TPT paid to Arizona*

Edison argues that even if a refund is not warranted, it is entitled to a $9,703,087.52 tax credit because it paid the TPT in Arizona. Edison contends that the TPT is, in substance, a sales tax regardless of its name. The Nevada Administrative Code dictates when a tax credit should be awarded:

> In determining the amount of use tax that is due from a taxpayer, the Department will allow a credit toward the amount due to this State in an amount equal to sales tax legitimately paid for the same purchase of tangible personal property to a state or local government outside of Nevada, upon proof of payment deemed satisfactory to the Department.

NAC 372.055. Thus, for Edison to be entitled to a tax credit, the TPT must be a sales tax.

Whether the TPT is a sales tax is a question of law that we review de novo. *See Garcia v. Prudential Ins. Co. of Am.*, 129 Nev. 15, 19, 293 P.3d 869, 872 (2013). "Sales taxes are imposed on the purchaser rather than on the seller. A sales tax is a distinct and separate charge

---

[9]Edison also argues that it is entitled to a refund pursuant to NRS 372.630 and NRS 372.690. NRS 372.630(1) states that if a tax has been "erroneously or illegally collected" it must "be refunded to the person." NRS 372.690 states that any judgment received by an injured taxpayer plaintiff "must first be credited" on the applicable sales or use tax due from the plaintiff, and then "[t]he balance of the judgment must be refunded to the plaintiff." We conclude that Edison's argument is without merit because these statutes would only be applicable here if Edison could demonstrate that there is a substantially similar favored competitor.

which the retail seller is required to collect as a pass through entity for the benefit of the state." 85 C.J.S. *Taxation* § 2143 (2010) (footnote omitted).

The Arizona TPT is generally provided for by statute:

> There is levied . . . by the department, . . . privilege taxes measured by the amount or volume of business transacted by persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales or gross income.

Ariz. Rev. Stat. Ann. § 42-5008(A) (2013). The TPT is broken into 15 different classifications. *See* Ariz. Rev. Stat. Ann. §§ 42-5061 through 42-5075. "The mining classification is comprised of the business of mining, quarrying or producing for sale, profit or commercial use any nonmetalliferous mineral product that has been mined, quarried or otherwise extracted within the boundaries of this state." Ariz. Rev. Stat. Ann. § 42-5072(A) (2013). "The tax base for the mining classification is the gross proceeds of sales or gross income derived from the business." Ariz. Rev. Stat. Ann. § 42-5072(B) (2013).

> The Supreme Court of Arizona has stated that the mining TPT
>
> is not a tax upon sales. It is purely an excise tax upon the privilege or right to engage in business in Arizona measured by the gross volume of business conducted within the state. The legal incidence of the tax falls on the seller. The taxable event is the engaging in the business of mining in Arizona.

*Indus. Uranium Co. v. State Tax Comm'n*, 387 P.2d 1013, 1014 (Ariz. 1963) (citation omitted); *see also Ariz. Dep't of Revenue v. Robinson's Hardware*, 721 P.2d 137, 141 n.2 (Ariz. Ct. App. 1986) ("Appellant continuously refers to the transaction privilege tax at issue here as a 'sales' tax. In doing so, it confuses two dissimilar types of taxes, since we have repeatedly held that a transaction privilege tax is not a 'sales' tax.");

SUPREME COURT
OF
NEVADA

(O) 1947A

14

*City of Phoenix v. West Publ'g Co.*, 712 P.2d 944, 946-47 (Ariz. Ct. App. 1985) ("Th[e TPT] is to be distinguished from a sales tax, which is generally added to the selling price and is borne by the consumer, with the vendor being made an agent of the taxing authority for purposes of collection."). Additionally, the Arizona Department of Revenue website provides an overview of the TPT that describes it as follows:

> The Arizona transaction privilege tax is commonly referred to as a sales tax; however, the tax is on the privilege of doing business in Arizona and is not a true sales tax. Although the transaction privilege tax is usually passed on to the consumer, it is actually a tax on the vendor.

*Transaction Privilege Tax*, State of Arizona Department of Revenue, https://www.azdor.gov/business/transactionprivilegetax.aspx (last visited June 6, 2017).

Here, the district court found that Edison "did not pay any sales tax to the [s]tate of Arizona on its purchase of the coal slurry. Any tax was paid by Peabody to the state of Arizona." The district court then concluded that "[i]n the contract between the parties[, Edison] agreed to reimburse Peabody as part of the sale price the taxes that Peabody paid to Arizona. This reimbursement was a part of the purchase price [Edison] paid to Peabody for the coal slurry."

If the TPT was a sales tax, it would be borne by Edison, and Peabody would simply be an agent of collection. However, the district court concluded, and we agree, that Edison did not bear the cost of the tax, and Peabody was not an agent that collected the tax; rather, it was Peabody, as the seller, that was responsible for the tax—it simply passed on the cost to Edison. In a pretrial pleading, Edison admitted that it "reimbursed Peabody for Arizona transaction privilege tax," and the

contract between the parties clearly demonstrates that Edison would reimburse Peabody for all taxes Peabody paid for the coal slurry delivered to Edison.

Although Edison argues that the mining TPT functions as a sales tax because it is levied on gross proceeds of sales, that alone does not render it a sales tax. *Homestake Mining Co. v. Johnson*, 374 N.W.2d 357, 362 (S.D. 1985) ("Merely because the measure of the tax is gross receipts, does not mean the nature of the tax is a sales tax."). "The sale cannot occur until there has been a severance from the earth in the first instance. Thereafter, a sale merely determines the metal's value and thus provides a measure for the tax and a time for collection." *Id.* The mining TPT, as a tax levied for the privilege of conducting nonmetalliferous mining business in Arizona, simply uses gross proceeds of sales to determine the value of the tax owed upon severance from the ground.

Further, Edison contends that the TPT has an exemption "for sales for resale," which is consistent with any true sales tax. We agree that such a provision is an essential component of a sales tax. *See* 67B Am. Jur. 2d *Sales and Use Taxes* § 173 (2010). The purpose of this exemption is to "avoid[ ] multiple taxation of the same property as it passes through the chain of commerce from producer to wholesaler to distributor to retailer." *Id.* Edison cites to two sections of Arizona's administrative code in support of its argument, *see* Ariz. Admin. Code §§ R15-5-101 and R15-5-122, but these administratively promulgated provisions only apply to the *retail classification*, not the mining classification. And the administrative code applicable to the mining classification—Ariz. Admin. Code §§ R15-5-901 through 15-909—does not provide for a resale exemption.

Accordingly, because the mining TPT is not a sales tax within the meaning of NAC 372.055, we hold that the district court did not err in concluding that Edison was not entitled to a tax credit.

## CONCLUSION

We conclude that NRS 372.270 cannot be harmonized with NRS 372.185 to provide Edison a refund. Edison also has not demonstrated the existence of substantially similar competitors that were advantaged by the unconstitutional tax. Furthermore, Edison is also not entitled to a tax credit because the TPT is not a sales tax within the meaning of NAC 372.055. Accordingly, we affirm the district court's final judgment.

_____, J.
Hardesty

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre