OPINION
 

 By the Court,
 

 Hardesty, J.;
 

 Nevada’s Open Meeting Law, NRS 241.020, provides that all meetings of public bodies must be open to the public unless a statutory exception clearly and unambiguously exempts a particular proceeding. Respondents claim that the version of NRS 360.247 in effect at the time of the events in issue
 
 [1]
 
 created a complete exception to the Open Meeting Law and granted respondent Nevada Tax Commission the discretion to close an entire taxpayer appeal. We conclude that respondents’ overbroad interpretation of the statutory exception would eviscerate the Open Meeting Law’s mandate that public bodies deliberate and vote in public meetings.
 

 This matter arises from the Tax Commission’s decision, following a series of hearings that it closed to the public, to grant respondent Southern California Edison a refund of use taxes it paid from 1998 to 2000. Thereafter, believing that the Tax Commission violated the Open Meeting Law by deliberating and voting on Edison’s appeal in closed sessions, appellant, the Attorney General filed a complaint in district court under NRS 241.037 to void the Tax Commission’s refunds to Edison. The district court ultimately dismissed the complaint.
 

 We consider on appeal the extent to which the Tax Commission could close its proceedings to the public under the exception to the Open Meeting Law set forth in former NRS 360.247. Because we strictly construe exceptions to the Open Meeting Law in favor of openness, we conclude that the exception in NRS 360.247 permitted the Tax Commission to close only the portion of its sessions at which it received confidential evidence and questioned the parties
 
 *235
 
 and heard argument concerning the confidential information. Therefore, the Tax Commission violated the Open Meeting Law to the extent that it received nonconfidential evidence, deliberated, and voted on Edison’s tax appeal in closed sessions. Accordingly, because actions taken in violation of the Open Meeting Law are void,
 
 [2]
 
 we reverse the district court’s judgment.
 

 FACTS
 

 Edison filed with the Department of Taxation several claims for refunds of use taxes it paid between March 1998 and December 2000. Specifically, Edison argued that the Department’s interpretation of NRS 372.270,
 
 [3]
 
 which exempts mine proceeds from use tax, was unconstitutional. The Department denied Edison’s claims in December 2002 and May 2003, and Edison appealed to the Tax Commission. The Tax Commission consolidated all of the claims into one case and assigned the appeal to a hearing officer. The hearing officer upheld the Department’s denial of Edison’s refund. Edison then appealed the hearing officer’s decision to the Tax Commission.
 

 The Tax Commission conducted four sessions on Edison’s appeal, from November 2004 to May 2005. A deputy attorney general was present at each one. When Edison requested that the Tax Commission close every session under NRS 360.247, the Tax Commission granted each request without any explanation on the record. During each closed hearing, the Tax Commission received evidence, heard argument, questioned the parties, deliberated, and voted in ways that affected the appeal. During a closed hearing on May 9, 2005, the Tax Commission deliberated and conducted the final vote to grant Edison’s requested tax refunds.
 

 Although the deputy attorneys general in attendance at the Tax Commission’s proceedings did not object while the Tax Commission was taking action or deliberating, the record reveals that the Tax Commission received advice that it should deliberate and take action on Edison’s appeal in open session. In particular, at Edison’s November 2004 hearing, when Edison moved for a closed hearing under NRS 360.247, the deputy attorney general in attendance advised the Tax Commission that there was no need to close the hearing. She further informed the Tax Commission that a formal opinion regarding the propriety of closing its sessions was forthcoming. The Tax Commission declined to follow the deputy attorney general’s advice and, following its long-standing practice, closed the hearing. In April 2005, the deputy attorney general as
 
 *236
 
 signed to the Tax Commission prepared a memorandum for the Tax Commission regarding its obligations under the Open Meeting Law and attached an Attorney General’s 1979 letter, which advised that the Tax Commission should close its sessions for the submission of information made confidential by former NRS 372.750 but open them for deliberations and voting.
 
 [4]
 
 In the April 2005 memorandum, the deputy attorney general clarified that both deliberation and voting on a taxpayer appeal must occur in open session. The Tax Commission again declined to follow the Attorney General’s advice and continued to close all of the Edison hearings— deliberating and voting in closed session.
 

 In June 2005, the Attorney General filed suit in district court under NRS 241.037, seeking to void the Tax Commission’s decision, alleging that the Tax Commission had violated Nevada’s Open Meeting Law by deliberating and voting on Edison’s appeal in closed session. The district court found that the Legislature had created an exception to the Open Meeting Law for all taxpayer appeal hearings before the Tax Commission and entered judgment dismissing the Attorney General’s complaint. The court also determined that, because a deputy attorney general was present at each of Edison’s hearings and failed to object to the Tax Commission taking action and deliberating in closed session, notions of estoppel prevented the Attorney General from enforcing the Open Meeting Law against the Tax Commission regarding Edison’s appeal. The Attorney General now appeals.
 

 DISCUSSION
 

 On appeal, the Attorney General argues that the Open Meeting Law required the Tax Commission to deliberate and vote on Edison’s appeal of its use tax refund claim in an open session. The Tax Commission and Edison respond that the version of NRS 360.247 in effect at the time of the events at issue provided a specific statutory exception to the Open Meeting Law when a taxpayer requested a closed hearing on a tax appeal. In this appeal, we address the breadth of the exception to the Open Meeting Law created by former NRS 360.247. Statutory interpretation, such as determining the scope of the exception to the Open Meeting Law created by NRS 360.247, is a question of law subject to de novo review.
 
 [5]
 

 We conclude that the version of NRS 360.247 applicable at the time of Edison’s tax appeal created a limited exception to the Open Meeting Law under which the Tax Commission could close, at a taxpayer’s request, only the portion of the Tax Commission’s
 
 *237
 
 session at which it received confidential evidence, and questioned witnesses, and heard argument concerning confidential information. The exception did not permit the Tax Commission to hold all portions of the taxpayer appeal hearings in closed sessions. Under the Open Meeting Law, the Tax Commission was required to receive nonconfidential evidence, deliberate, and vote in open session.
 

 The Attorney General cannot be estopped from enforcing the Open Meeting Law
 

 As a threshold matter, the Tax Commission and Edison argue that the Attorney General should be estopped from enforcing the Open Meeting Law in this case. Specifically, the Tax Commission and Edison argue that because the Tax Commission had closed hearings for deliberating and voting on taxpayer appeals since at least 1997
 
 [6]
 
 without objection from deputy attorneys general in attendance at the closed hearings, the Attorney General is estopped from arguing that the Tax Commission violated Nevada’s Open Meeting Law when it deliberated and voted on Edison’s appeal in closed sessions.
 

 We have explained that “[ejquitable estoppel operates to prevent a party from asserting legal rights that, in equity and good conscience, [the party] should not be allowed to assert because of [his] conduct.”
 
 [7]
 
 To establish that an opposing party should be equitably estopped, the proponent must prove that:
 

 “(1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; [and] (4) he must have relied to his detriment on the conduct of the party to be estopped.”
 
 [8]
 

 Estoppel does not apply in this case for two reasons: the Tax Commission and Edison failed to prove that they were ignorant of
 
 *238
 
 the true state of the facts, and a government body may not be estopped from performing its governmental function.
 
 [9]
 

 The Tax Commission submitted nearly 30 years of hearing transcripts illustrating that, during that period, it deliberated and voted in closed sessions without objection from the deputy attorneys general in attendance. Here, given that the deputy attorney general in attendance at Edison’s November 2004 hearing, before the session was closed, advised the Tax Commission that a closed session was not required, citing NRS 360.247 and NRS 372.750 and discussing their purposes, neither the Tax Commission nor Edison were unaware of the law controlling taxpayer confidentiality before the Tax Commission. While the parties to this lawsuit may have had differing opinions as to the interpretation of the controlling law, a difference of opinion does not satisfy the requirement for estoppel that the proponent be ignorant of the true circumstances.
 

 Furthermore, estoppel cannot prevent the state from performing its governmental functions.
 
 [10]
 
 The Attorney General, in pursuing this lawsuit, is fulfilling its duty to enforce the Open Meeting Law.
 
 [11]
 
 Thus, although previous deputy attorneys general failed to enforce the interpretation of the Open Meeting Law contained in the 1979 letter or to object to the past Tax Commission’s actions, the Attorney General cannot now be estopped from performing its governmental function of enforcing the Open Meeting Law.
 

 Nevada’s Open Meeting Law requires all meetings of public bodies to be open to the public
 

 Turning to the primary issue raised in this case, Nevada’s Open Meeting Law, NRS 241.020(1), states, “Except as otherwise provided by specific statute, all meetings of public bodies must be open and public, and all persons must be permitted to attend any meeting of these public bodies.” A “meeting,” as defined in NRS 241.015(2)(a)(l), is “[t]he gathering of members of a public body at which a quorum is present to deliberate toward a decision or to take action on any matter over which the public body has supervision, control, jurisdiction or advisory power.” Thus, a meeting, by definition, can consist of “action” or “deliberation.” “Action,” as defined by NRS 241.015(l)(a), is “[a] decision made by a majority of the members present during a meeting of a public body.” In
 
 Dewey v. Redevelopment Agency of Reno,
 
 we defined “deliberation” as “a collective discussion amongst a quorum of a public body.”
 
 [12]
 
 “Deliberation” as defined in
 
 Dewey
 
 encompasses “ ‘not
 
 *239
 
 only collective discussion, but the collective acquisition or the exchange of facts preliminary to the ultimate decision.’ ”
 
 [13]
 
 Therefore, under the Open Meeting Law, a meeting is a gathering of a public body quorum at which it acquires information, discusses the information, or makes decisions regarding that information within its jurisdiction.
 

 We have held that meetings of public bodies should be open “whenever possible” to comply with the spirit of the Open Meeting Law.
 
 [14]
 
 Since generally all meetings must be open, this court strictly construes all exceptions to the Open Meeting Law in favor of openness.
 
 [15]
 
 In
 
 McKay
 
 v.
 
 Board of County Commissioners,
 
 we noted that the narrow construction of exceptions to the Open Meeting Law stems from the Legislature’s use of the term “specific” in NRS 241.020(1) and that such exceptions must be explicit and definite.
 
 [16]
 
 Because exceptions to the Open Meeting Law must be construed narrowly to favor openness and public bodies should meet openly whenever possible, we recognize that exceptions to the Open Meeting Law extend only to the portions of a proceeding specifically, explicitly, and definitely excepted by statute.
 
 [17]
 

 Former NRS 360.247 created a limited exception to the Open Meeting Law
 

 The Tax Commission argues that former NRS 360.247 created a statutory exception to the Open Meeting Law that not only allowed, but also required, the Tax Commission to close any session at which it would hear a taxpayer’s appeal if the taxpayer requested closure. While the Tax Commission has historically closed the entire session in a taxpayer appeal, its sole justification for doing so is the confidentiality of taxpayer information established by former NRS 372.750.
 

 
 *240
 
 The Attorney General agrees that NRS 360.247 created a statutory exception to the Open Meeting Law, but argues that the exception was not as broad as the Tax Commission asserts. The Attorney General maintains that the exception only allowed the Tax Commission to close a session, upon a taxpayer’s request, for the limited purpose of receiving confidential evidence from a taxpayer. We agree.
 

 Generally, when “ ‘the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.’ ”
 
 [18]
 
 A statute is ambiguous when it “is capable of being understood in two or more senses by reasonably informed persons”
 
 [19]
 
 or it does not otherwise speak to the issue before the court.
 
 [20]
 
 An ambiguous statute may be examined through legislative history, reason, and considerations of public policy to determine the Legislature’s intent.
 
 [21]
 
 We look first to the language of former NRS 360.247 to determine whether it is ambiguous.
 

 Former NRS 360.247 generally required the Tax Commission to hear all taxpayer appeals in open session, but it also provided that the Tax Commission could close a hearing upon a taxpayer’s request. At the time of the underlying proceedings, NRS 360.247 stated as follows:
 

 Except as otherwise provided in this section, any appeal to the Nevada Tax Commission which is taken by a taxpayer concerning his liability for tax must be heard during a session of the Commission which is open to the public. A hearing on such an appeal may be closed to the public if the taxpayer requests that it be closed.
 

 
 *241
 
 Former NRS 360.247 used two different terms to refer to Tax Commission proceedings: “session” and “hearing.” It provided that all “sessions” must be open but that “hearings” could be closed. Additionally, the Open Meeting Law requires all “meetings” to be open. While “meeting” is a defined term in the Open Meeting Law, the Legislature failed to make a distinction between the terms “meeting,” “session,” and “hearing.” The Attorney General argues that a “hearing” encompasses only the receipt of evidence; the Tax Commission and Edison argue that a “hearing” includes taking evidence, deliberating, and voting.
 

 To support their arguments, the parties cite different dictionary definitions of “hearing.” The Tax Commission argues in favor of the definition of “hearing” contained in
 
 Black’s Law Dictionary.
 

 A proceeding of relative formality (though generally less formal than a trial), generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and evidence presented. It is a proceeding where evidence is taken to determine issue[s] of fact and to render decision on basis of that evidence.
 
 [22]
 

 The Attorney General argues that this court should apply a definition from
 
 Dictionary.com:
 
 “an instance or a session in which testimony and arguments are presented, esp. before an official, as a judge in a lawsuit.”
 
 [23]
 
 According to the Tax Commission, under
 
 Black’s Law Dictionary’s
 
 definition of “hearing,” a hearing calls for a decision to be made during the proceeding. In contrast, the Attorney General relies on
 
 Dictionary.corn’s
 
 definition of “hearing” to argue that a hearing allows only for the receipt of evidence. We have reviewed several other definitions of “hearing,” and though they varied as to whether a decision should be made during a “hearing,” they all shared a common element: a hearing is an official gathering at which evidence is taken.
 
 [24]
 

 Because NRS 360.247 is susceptible to at least two reasonable, but incompatible, interpretations by applying different definitions
 
 *242
 
 of “hearing,” former NRS 360.247 is ambiguous.
 
 [25]
 
 To resolve this ambiguity, we look to the legislative history of the statute to determine the Legislature’s intent.
 

 The history of NRS 360.247 suggests that the Legislature intended the Tax Commission to receive confidential information in a closed hearing, but to deliberate and vote on taxpayer appeals in open session. In 1979, before the Legislature enacted NRS 360.247, the Attorney General opined that NRS 372.750, which criminalized the disclosure by the Tax Commission of certain taxpayer information, was intended to protect taxpayers’ privacy when the Tax Commission obtained confidential information in the course of enforcing taxes.
 
 [26]
 
 Despite the advice of the Attorney General that the Tax Commission could only close its meeting to receive and discuss information that NRS 372.750 made confidential, the Tax Commission consistently closed entire taxpayer appeal hearings. In 1983, the Department and the Tax Commission sought clarification from the Legislature. Patrick Pine, Executive Director of the Department of Taxation, sent a memorandum to the Assembly Taxation Committee concerning the proposed legislation.
 
 [27]
 

 In his memorandum, Pine expressed the Tax Commission’s desire to open meetings and allow taxpayers access to the Tax Commission’s decision-making process. Pine referenced the Attorney General’s 1979 letter that concluded that the Tax Commission should close its sessions for the submission of confidential information but open them for deliberations and voting. Pine discussed a problem with that interpretation; he stated that the Tax Commission would be subject to criminal prosecution if it disclosed confidential information during deliberation in an open session.
 
 [28]
 

 At that time, NRS 372.750 criminalized any disclosure of confidential taxpayer information by the Tax Commission. Pine argued that the Legislature should create an exception to NRS 372.750 for the public discussion of relevant information disclosed during
 
 *243
 
 taxpayer-initiated appeals. Pine’s proposed exception did not limit the Tax Commission’s liability if it disclosed confidential taxpayer information outside the appeal process, but it allowed the Tax Commission to discuss all the information relevant to a taxpayer appeal in an open meeting. In arguing in favor of this exception to NRS 372.750, Pine stated that “the deliberative decision making process require[d] full discussion in open meeting.”
 
 [29]
 
 Pine explained that providing public access to the factual reasons for the Tax Commission’s decisions aids the public in evaluating their possible appeals and in assuring public awareness of fair treatment between taxpayers in the same industry.
 

 It appears that in response to Pine’s testimony, in 1983, the Legislature added subsection 6 to NRS 372.750
 
 [30]
 
 and enacted NRS 360.247. Under former NRS 372.750(6), “[Relevant information may be disclosed as evidence in an appeal by the taxpayer from a determination of tax due.” By enacting NRS 372.750(6), the Legislature granted the Tax Commission immunity from criminal liability for disclosing relevant information, which may be confidential, during an open session on a taxpayer’s appeal. The grant of immunity and the discussions that preceded enactment of NRS 360.247 and NRS 372.750(6) suggest that the Legislature intended the Tax Commission to deliberate in open session.
 

 Therefore, given the legislative history and following the principle requiring strict construction of exceptions to the Open Meeting Law, we conclude that the Legislature intended to permit the Tax Commission to close only the portion of its sessions concerning a taxpayer’s appeal at which it received confidential evidence, and questioned the parties, and heard argument concerning confidential information.
 
 [31]
 
 A hearing, under NRS 360.247, is equivalent to the collective acquisition of facts preliminary to the ultimate decision — one part of deliberation. The other part of deliberation — the collective discussion of relevant facts — is not within the narrow definition of “hearing” and therefore must take place in open session. By applying this definition of “hearing,” the interpretation of NRS 360.247 also comports with the Legislature’s intent to have the Tax Commission discuss taxpayer appeals in
 
 *244
 
 open session. We hold that NRS 360.247 must be read as allowing the Tax Commission to close only the portion of its sessions at which it received confidential evidence, and questioned the parties, and heard argument concerning confidential information.
 

 In this case, the Tax Commission closed all sessions for each of Edison’s four appeal hearings. During those closed sessions, the Tax Commission deliberated regarding whether to allow Clark County and the City of Henderson to intervene in the appeal, voted to allow the intervention, determined the intervenors’ roles in the appeal, discussed the intervenors’ duties of confidentiality to Edison, heard argument regarding the appeal, questioned the parties concerning the appeal, deliberated the merits of the appeal, and voted to refund Edison’s taxes. Our review of the record of the Tax Commission’s closed sessions reveals that many of these items could not be construed as confidential under former NRS 372.750(1) or could have been revealed as relevant information under former NRS 372.750(6).
 

 NRS 360.247 allowed the Tax Commission to close its session to hold a hearing at which it took confidential evidence from the parties; however, the Open Meeting Law required the Tax Commission to receive nonconfidential evidence, deliberate the collective discussion of relevant facts, and vote on Edison’s appeal in open session. Therefore, to the extent that the Tax Commission took nonconfidential evidence, deliberated, and voted regarding Edison’s appeal in closed session, it violated the Open Meeting Law. Under NRS 241.036, actions taken in violation of the Open Meeting Law are void. Accordingly, we reverse the district court’s judgment dismissing the Attorney General’s complaint.
 

 CONCLUSION
 

 We conclude that the Tax Commission’s practice of closing the entirety of a session at a taxpayer’s request violates the Open Meeting Law. Under the law applicable to this case, the Tax Commission could only close sessions in a taxpayer’s appeal to receive confidential evidence, and question the parties, and hear argument concerning that evidence, but it was required to take nonconfidential evidence, deliberate the collective discussion of relevant facts, and vote in open session subject to the Open Meeting Law.
 

 When considering Edison’s appeal, the Tax Commission deliberated entirely in closed session and voted in closed session. Therefore, its action granting Edison’s refund was taken in violation of the Open Meeting Law. Actions taken in violation of the Open Meeting Law are void.
 
 [32]
 
 Therefore, because the Tax Com
 
 *245
 
 mission’s grant of Edison’s tax refund is void, we reverse the district court’s judgment.
 

 Gibbons, C. J., Maupin, Parraguirre, Douglas, Cherry and Saitta, JJ., concur.
 

 [1]
 

 Two statutes primarily at issue in this appeal, NRS 360.247 and NRS 372.750, were amended in 2007. The parties agree that the amendments do not apply to this case because the amendments were not retroactive.
 
 See
 
 2007 Nev. Stat., ch. 296, § 4, at 1127 (“The provisions of NRS 360.247, as amended by section 2 of this act, do not apply to any appeal to the Nevada Tax Commission taken by a taxpayer concerning his liability for tax that has been heard by the Commission before July 1, 2007.”);
 
 Matter of Estate of Thomas,
 
 116 Nev. 492, 495-96, 998 P.2d 560, 562 (2000) (“The general rule is that statutes are prospective only, unless it clearly, strongly, and imperatively appears from the act itself that the legislature intended the statute to be retrospective in its operation”).
 

 [2]
 

 NRS 241.036.
 

 [3]
 

 NRS 372.270 provides as follows: “Proceeds of mines. There are exempted from the taxes imposed by this chapter the gross receipts from the sale of, and the storage, use or other consumption in this State of, the proceeds of mines which are subject to taxes levied pursuant to chapter 362 of NRS.”
 

 [4]
 

 Hearing on A.B. 198 Before the Senate Comm, on Taxation, 62d Leg. (Nev., March 8, 1983), Exhibit F.
 

 [5]
 

 See State, Div. of Insurance v. State Farm,
 
 116 Nev. 290, 293, 995 P.2d 482, 484 (2000).
 

 [6]
 

 Between 1981 and 1997, the Tax Commission closed its sessions for deliberation of a taxpayer’s appeal but would, at times, vote in open session. The Attorney General concedes that from 1997 until it filed this suit, the Tax Commission, on a taxpayer’s request, received evidence, deliberated, and voted on taxpayer appeals entirely in closed sessions.
 

 [7]
 

 Nevada State Bank
 
 v.
 
 Jamison Partnership,
 
 106 Nev. 792, 799, 801 P.2d 1377, 1382 (1990).
 

 [8]
 

 NGA #2 Ltd. Liab. Co.
 
 v.
 
 Rains,
 
 113 Nev. 1151, 1160, 946 P.2d 163, 169 (1997) (quoting
 
 Cheqer, Inc.
 
 v.
 
 Painters & Decorators,
 
 98 Nev. 609, 614, 655 P.2d 996, 998-99 (1982)).
 

 [9]
 

 Foley v. Kennedy,
 
 110 Nev. 1295, 1302, 885 P.2d 583, 587 (1994).
 

 [10]
 

 Id.
 

 [11]
 

 NRS 241.040(4) (“The attorney general shall investigate and prosecute any violation of this chapter.”).
 

 [12]
 

 119 Nev. 87, 98, 64 P.3d 1070, 1077 (2003).
 

 [13]
 

 Id.
 
 at 97, 64 P.3d at 1077 (quoting Frankie Sue Del Papa,
 
 Nevada Open Meeting Law Manual 23
 
 (Nev. Att’y Gen., 8th ed. 2000) (quoting
 
 Sacramento Newspaper Guild v. Sacramento Co. Bd. of
 
 Super., 69 Cal. Rptr. 480, 485 (Ct. App. 1968))).
 

 [14]
 

 McKay v. Bd. of Supervisors,
 
 102 Nev. 644, 651, 730 P.2d 438, 443 (1986).
 

 [15]
 

 Id.
 

 [16]
 

 McKay v. Board of Cty. Comm’r,
 
 103 Nev. 490, 492-93, 746 P.2d 124, 125-26 (1987).
 

 [17]
 

 In 2007, the Legislature amended NRS 241.020(1) to read:
 

 Except as otherwise provided by specific statute, all meetings of public bodies must be open and public, and all persons must be permitted to attend any meeting of these public bodies.
 
 A meeting that is closed pursuant to a specific statute may only be closed to the extent specified in the statute allowing the meeting to be closed. All other portions of the meeting must be open and public, and the public body must comply with
 
 
 *240
 

 all other provisions of this chapter to the extent not specifically precluded by the specific statute.
 

 2007
 
 Nev. Stat., ch. 296, § 1, at 1122 (emphasis added). This amendment codified the existing law requiring strict construction of exceptions to the Open Meeting Law, as discussed above.
 
 See
 
 Hearing on A.B. 433 Before the Senate Comm, on Government Affairs, 74th Leg. (Nev., May 9, 2007) (testimony of Assemblywoman Barbara E. Buckley stating that existing law required meetings to be open and that exceptions to the Open Meeting Law should be narrowly construed).
 

 [18]
 

 State, Div. of Insurance v. State Farm,
 
 116 Nev. 290, 293, 995 P.2d 482, 485 (2000) (quoting
 
 State v. Jepsen,
 
 46 Nev. 193, 196, 209 P. 501, 502 (1922)).
 

 [19]
 

 McKay v. Bd. of Supervisors,
 
 102 Nev. at 649, 730 P.2d at 442.
 

 [20]
 

 Salas v. Allstate Rent-A-Car, Inc.,
 
 116 Nev. 1165, 1168, 14 P.3d 511, 514 (2000).
 

 [21]
 

 State Farm,
 
 116 Nev. at 294, 995 P.2d at 485;
 
 Salas,
 
 116 Nev. at 1168, 14 P.3d at 514.
 

 [22]
 

 Black’s Law Dictionary 111
 
 (6th ed. 1990).
 

 [23]
 

 Dictionary.com Unabridged
 
 (v. 1.1),
 
 http://dictionary.reference.com/ browse/hearing
 
 (last visited Apr. 14, 2008) (on file with the Nevada Supreme Court Clerk’s Office).
 

 [24]
 

 See Merriam-Webster’s Collegiate Dictionary
 
 535 (1994) (“2 a : opportunity to be heard, to present one’s side of a case, or to be generally known or appreciated b (1) : a listening to arguments (2) : a preliminary examination in criminal procedure c : a session (as of a legislative committee) in which testimony is taken from witnesses.”);
 
 Webster’s New International Dictionary
 
 1150 (2d. ed. 1959) (“2. Attention to what is delivered; opportunity to be heard; audience; ... 8.
 
 Law
 
 a In equity practice, a trial, b A listening to argument or proofs and arguments in interlocutory proceedings.”);
 
 Black’s Law Dictionary
 
 725 (7th ed. 1999) (“1. A judicial session, usu. open to the pub-
 
 *242
 
 lie, held for the purpose of deciding issues of fact or of law, sometimes with witnesses testifying .... 2.
 
 Administrative law.
 
 Any setting in which an affected person presents arguments to an agency decision-maker.”).
 

 [25]
 

 We note that NRS 360.247 is also ambiguous because after granting the Tax Commission discretion to close a hearing, by using the word “may,” it fails to establish guidelines for the use of that discretion. In the absence of guidance, the Tax Commission treated the closure of a hearing as mandatory at a taxpayer’s request. Thus, a case never arose where a taxpayer challenged a Tax Commission decision not to close a hearing.
 

 [26]
 

 See
 
 Hearing on A.B. 198 Before the Senate Comm, on Taxation, 62d Leg. (Nev., March 8, 1983), Exhibit F.
 

 [27]
 

 Hearing on A.B. 198 Before the Assembly Comm, on Taxation, 62d Leg. (Nev., February 23, 1983), Exhibit D.
 

 [28]
 

 Id.
 

 [29]
 

 Id.
 

 [30]
 

 This provision was subsection 4 when added in 1983.
 
 See
 
 1983 Nev. Stat., ch. 129, § 2, at 317. Subsection 4 became subsection 6 upon later revisions.
 
 See
 
 1995 Nev. Stat., ch. 486, § 7, at 1578.
 

 [31]
 

 Former NRS 372.750(1) made the following information confidential:
 

 the business affairs, operations or information obtained by an investigation of records and equipment of any retailer or any other person visited or examined in the discharge of official duty, or the amount or source of income, profits, losses, expenditures or any particular of them, set forth or disclosed in any return.
 

 [32]
 

 NRS 241.036.