140 Nev., Advance Opinion 65

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THE HEIGHTS OF SUMMERLIN, LLC, A FOREIGN LIMITED LIABILITY CORPORATION; SUMMIT CARE, LLC, A FOREIGN LIMITED LIABILITY CORPORATION; GENESIS HEALTHCARE, INC., A DOMESTIC CORPORATION; LATOYA DAVIS, INDIVIDUALLY AND AS ADMINISTRATOR; AND ANDREW REESE, INDIVIDUALLY AND AS ADMINISTRATOR, Petitioners, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE ERIKA D. BALLOU, DISTRICT JUDGE, Respondents, and RACHELLE CRUPI, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR, PERSONAL REPRESENTATIVE, AND HEIR TO THE ESTATE OF ALETHA PORCARO, DECEASED, Real Party in Interest. | No. 86214 |



FILED

OCT 03 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY: _____
DEPUTY CLERK

Original petition for a writ of mandamus challenging a district court order denying a motion to dismiss that asserted immunity from COVID-19-related claims.

*Petition denied.*



24-36913

Hutchison & Steffen, PLLC, and Courtney Christopher, David J. Mortensen, and Derek Linford, Las Vegas,
for Petitioners.

Henness & Haight and Michael D. Haight, Genevieve Romand, and David T. Gluth, Las Vegas,
for Real Party in Interest.

J. Cogburn Law and Jamie S. Cogburn and Hunter S. Davidson, Henderson,
for Amicus Curiae Nevada Justice Association.

BEFORE THE SUPREME COURT, STIGLICH, PICKERING, and PARRAGUIRRE, JJ.

## OPINION

By the Court, STIGLICH, J.:

In this opinion, we consider whether the federal Public Readiness and Emergency Preparedness Act (PREP Act) or Nevada's Emergency Directive 011 grant immunity to a health care facility from a cause of action involving the facility's lack of a COVID-19 safety policy. While we have previously determined that the PREP Act applies to the administration of certain COVID-19-related drugs and treatments,[1] we have yet to determine whether it applies to the alleged failure to act to prevent the spread of the disease. We also have not analyzed Directive 011 or explored whether it grants health care facilities immunity from liability, either directly or derivatively.

_____

[1]*De Becker v. UHS of Del., Inc.*, 140 Nev., Adv. Op. 58, ___ P.3d ___ (September 19, 2024).

Here, petitioners assert that the PREP Act and Directive 011 immunize them from liability, such that the district court was obliged to dismiss the claims against them. We conclude that the PREP Act does not apply to a lack of action or treatment and therefore petitioners are not immune under it from claims based on a failure to enact COVID-19 policies. In doing so, we align ourselves with federal courts around the country. We further conclude that Directive 011 does not directly immunize petitioners from liability because the directive applies to individuals and not health care facilities. Accordingly, we deny petitioners' mandamus petition.

*FACTS*

Aletha Porcaro entered The Heights of Summerlin for rehabilitation following surgery to repair her fractured femur. The Heights is a skilled nursing facility that specializes "in short stay rehabilitation services," "including infusion therapy, parenteral nutrition, wound management, and post-surgical care." *The Heights of Summerlin*, https://www.theheightsofsummerlin.com/about-us/ (last visited Aug. 27, 2024). The day Porcaro was discharged from The Heights and transferred to a senior-living apartment complex, she fell sick with COVID-19. She died eight days later.

After Porcaro's death, her daughter, real party in interest Rachelle Crupi, filed a complaint against The Heights, its parent companies Genesis Healthcare, Inc., and Summit Care, LLC, their administrators, and other employees (collectively, The Heights). Crupi alleged that The Heights failed to implement effective COVID-19 safety protocols and raised eight causes of action, including negligence/negligence per se; negligent hiring, training, retention, and supervision; abuse and neglect of an older/vulnerable person; breach of contract; negligent misrepresentation;

fraud/intentional misrepresentation; wrongful death; and professional negligence.

The Heights removed the case to federal district court. *Crupi v. Heights of Summerlin, LLC*, Case No. 2:21-cv-00954-GMN-DJA, 2022 WL 489857, at *1 (D. Nev. Feb. 17, 2022), *aff'd*, No. 22-15413, 2023 WL 4105306 (9th Cir. June 21, 2023). The federal district court remanded the case back to state court. *Id.* at *7. In state court, The Heights moved to dismiss, arguing that the PREP Act, 42 U.S.C. § 247d-6d, and Nevada's Declaration of Emergency Directive 011 (Apr. 1, 2020), which both grant immunity regarding the administration or use of countermeasures to diseases during public health emergencies, precluded Crupi's claims. The district court granted in part and denied in part The Heights' motion to dismiss, dismissing the claim for professional negligence on other grounds but allowing the other claims to proceed.

The Heights petitioned this court for a writ of mandamus, arguing that the PREP Act and Directive 011 immunized it from Crupi's claims. The Nevada Justice Association filed an amicus brief supporting Crupi.

## DISCUSSION

*Entertaining the petition is warranted*

The Heights argues that mandamus is warranted to clarify that the PREP Act and Directive 011 immunize it from Crupi's claims and that this court should direct the district court to grant its motion to dismiss. The Heights argues that the PREP Act and Directive 011 bar Crupi's claims.

"This court has original jurisdiction to issue writs of mandamus and prohibition." *MountainView Hosp., Inc. v. Eighth Jud. Dist. Ct.*, 128 Nev. 180, 184, 273 P.3d 861, 864 (2012). "Whether extraordinary writ relief will issue is solely within this court's discretion." *Id.* A traditional writ of

mandamus is proper when the petitioner has a legal entitlement to the act the writ seeks, the respondent is obligated to perform the act, and "the petitioner has no other plain, speedy, and adequate remedy." *Walker v. Second Jud. Dist. Ct.*, 136 Nev. 678, 680, 476 P.3d 1194, 1196 (2020) (internal quotation marks omitted). Writ petitions challenging district court orders denying motions to dismiss are highly disfavored, as such petitions can disrupt the district court case and consume this court's resources, *Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 124 Nev. 193, 197, 179 P.3d 556, 558-59 (2008), but rarely meet the requirements for traditional mandamus.

Even if a petitioner fails to meet the standard for traditional mandamus, however, we will consider granting advisory mandamus when a petition presents "legal issues of statewide importance requiring clarification" and the decision promotes "judicial economy and administration by assisting other jurists, parties, and lawyers." *Walker*, 136 Nev. at 683, 476 P.3d at 1198 (internal quotation marks omitted). In *International Game Technology*, we entertained a petition for advisory mandamus relief to clarify the interpretation of a statute involving whistleblowers at work. 124 Nev. at 198, 179 P.3d at 559. And in *Cote H. v. Eighth Judicial District Court*, we entertained a petition to clarify the applicability of a particular statute to minors even though petitioner appeared to have an adequate legal remedy. 124 Nev. 36, 39, 175 P.3d 906, 908 (2008). In both cases, we found that a review of the issue would promote judicial economy and administration, especially because the issue in *Cote* was "a question of first impression that [arose] with some frequency." *Id.* at 39-40, 175 P.3d at 908; *see also Int'l Game Tech.*, 124 Nev. at 198, 179 P.3d at 559 (holding that this court's review of a petition regarding an

important issue of public policy promotes judicial economy and administration).

The PREP Act, passed by the United States Congress in 2005, authorizes the Secretary of the Department of Health and Human Services to issue a declaration during a public health crisis that provides immunity from liability for "claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1), (b). The sole exception to immunity from suit is in cases of willful misconduct. 42 U.S.C. § 247d-6d(d)(1); see also 42 U.S.C. § 247d-6d(c)(1)(A) (defining "willful misconduct"). Similarly, Directive 011 is an emergency declaration issued by then-Governor Steve Sisolak granting immunity to providers of medical services, including skilled personnel, during the COVID-19 pandemic. Directive 011, § 1.

We entertain this petition under the theory of advisory mandamus relief because whether a failure to implement a COVID-19 safety program triggers immunity under the PREP Act or Directive 011 presents an important legal question that requires clarification. Nevada appellate courts have yet to publish a decision addressing this issue under the PREP Act, and the district court judges have issued conflicting orders on the subject, which weighs in favor of entertaining the petition. In *Shankle v. Heights of Summerlin, LLC*, the Eighth Judicial District Court held that the PREP Act granted The Heights immunity from a wrongful death suit based on The Heights' failure to develop protocols to stop the spread of COVID-19 because the allegations related to The Heights' handling of the COVID-19 pandemic, which included the use of respirator masks and COVID-19 test kits. No. A-21-836257-C, at *3-4 (Nev., 8th Jud.

Dist. Aug. 25, 2022) (Order Granting in Part & Denying in Part Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint). The district court judges in other cases, including this one, however, determined that the PREP Act did not apply.[2] *Crupi v. Heights of Summerlin*, No. A-21-832741-C, at *4 (Nev., 8th Jud. Dist. Oct. 26, 2022) (Order Granting in Part & Denying in Part Defendants' Motion to Dismiss); *Ford v. Homestead Holdings, LLC*, No. 21-10DC-1291, at *9 (Nev., 10th Jud. Dist. Feb. 27, 2023) (Order Denying Defendants' Motion to Dismiss Plaintiffs' Complaint) (holding that the PREP Act does not apply because a failure "to establish an infection prevention and control program" does not involve the administration of covered countermeasures). The different applications of the PREP Act in the district courts weigh in favor of entertaining the petition to clarify whether the PREP Act immunizes health care facilities that fail to follow COVID-19 safety protocols.

We also determine that judicial economy favors entertaining the petition. Cases involving the failure to implement COVID-19 protocols have arisen with some frequency, including in several recent cases in the federal District of Nevada involving The Heights, each of which was remanded to the state courts. *See, e.g., LaMonica v. Heights of Summerlin, LLC*, No. 2:21-CV-1040 JCM (DJA), 2022 WL 542565 (D. Nev. Feb. 23, 2022) (Order); *Huntington v. Yate Holdings, LLC*, No. 2:21-CV-1809 JCM (EJY),

---

[2]The Heights also argues that another case shows a conflict between district court decisions, but that case is factually different from the one currently before us because it involved the administration of a COVID-19 drug, remdesivir, which the PREP Act covers. *De Becker v. UHS of Del., Inc.*, No. A-22-851679-C (Nev., 8th Jud. Dist. Dec. 30, 2022) (Amended Order Granting Defendants Khuong T. Lam, D.O.'s & Shfali Bhandari, M.D.'s Motion to Dismiss Plaintiffs' Complaint & Desert Springs Hospital Medical Center's Motion to Dismiss Plaintiffs' First Amended Complaint).

2022 WL 507512 (D. Nev. Feb. 18, 2022) (Order); *Crupi v. Heights of Summerlin, LLC*, No. 2:21-cv-00954-GMN-DJA, 2022 WL 489857 (D. Nev. Feb. 17, 2022) (Order); *Ostrander v. Heights of Summerlin, LLC*, Case No. 2:21-cv-01418-JAD-NJK, 2021 WL 5763554 (D. Nev. Dec. 1, 2021) (Order Denying Motion to Stay Order Remanding this Case Back to State Court); *Shankle v. Heights of Summerlin, LLC*, 574 F. Supp. 3d 820 (D. Nev. Dec. 1, 2021) (Order Granting Motion to Remand & Denying Motions to Dismiss); *Smith v. Heights of Summerlin, LLC*, No. 2:21-cv-01685-JAD-NJK, 2021 WL 5763556 (D. Nev. Dec. 1, 2021) (Order Granting Motion to Remand & Denying Motions to Dismiss); *Ossowski v. St. Joseph Transitional Rehab. Ctr.*, No. 2:21-CR-1417 JCM (BNW), 2021 WL 4699235 (D. Nev. Oct. 6, 2021) (Order).

Notably, we have recently reviewed and denied two writ petitions filed by The Heights with facts nearly identical to this case. *Heights of Summerlin, LLC v. Eighth Jud. Dist. Ct. (Ostrander I)*, No. 86206, 2023 WL 2720939 (Nev. Mar. 30, 2023) (Order Denying Petition for Writ of Mandamus); *Heights of Summerlin, LLC v. Eighth Jud. Dist. Ct. (Ostrander II)*, No. 87547, 2023 WL 8535657 (Nev. Dec. 8, 2023) (Order Denying Petition for Writ of Mandamus). Both *Ostrander* cases and the case at hand involve patients at The Heights who passed away after contracting COVID-19. In *Ostrander I*, the record reflects that the district court denied The Heights' motion to dismiss, finding that the PREP Act did not apply. *Ostrander v. Heights of Summerlin, LLC*, A-21-837212-C, at *6-7 (Nev., 8th Jud. Dist. June 15, 2022) (Order Denying Defendants' Motion to Reconsider).

Because writ review has been requested several times on the same issue and because that issue is an issue of first impression, we

entertain the petition for advisory mandamus relief. We agree, however, with the district court's denial of the motion to dismiss and, therefore, deny the writ petition.

*The PREP Act did not bar Crupi's claims*

The Heights argues that the PREP Act immunizes it from Crupi's claims because the claims arise out of the administration or use of covered countermeasures to prevent the spread of COVID-19. This court reviews questions of law de novo, even within the context of writ petitions. *Moseley v. Eighth Jud. Dist. Ct.*, 124 Nev. 654, 662, 188 P.3d 1136, 1142 (2008).

The PREP Act was intended to encourage the "development and deployment of . . . diagnostics, treatments, and vaccines" during times of crisis by limiting a company's legal liability. *Maney v. Brown*, 91 F.4th 1296, 1298 (9th Cir. 2024) (internal quotation marks omitted). To this end, the Act shields covered persons from liability for claims arising from "federal or state law that relate to the use of a covered countermeasure." *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 401 (3d Cir. 2021) (citing 42 U.S.C. § 247d-6d(a)(1)). Specifically, "[c]overed persons are immune from 'any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure.'" *Maglioli*, 16 F.4th at 401 (quoting 42 U.S.C. § 247d-6d(a)(2)(B)). A covered person includes a manufacturer, distributor, or program planner of a countermeasure or "a qualified person who prescribed, administered, or dispensed such countermeasure." 42 U.S.C. § 247d-6d(i)(2)(B)(i)-(iv). Relevant here, "a qualified person" is "a licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures." 42 U.S.C. § 247d-6d(i)(8)(A). Covered countermeasures include qualified pandemic or epidemic products; security

countermeasures; emergency-use drugs, biological products, or devices, as defined and authorized in particular sections of the Federal Food, Drug, and Cosmetic Act; or respiratory protective devices. 42 U.S.C. § 247d-6d(i)(1).

Federal courts have found that a failure "to develop proper protocols to stop the transmission and spread of COVID-19" does not implicate the PREP Act because that failure is not a covered countermeasure. *Shankle*, 574 F. Supp. 3d at 826; *see also Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 856 (6th Cir. 2023) (holding that the PREP Act does not cover a failure to use countermeasures); *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 246 (5th Cir. 2022) (holding that failing to deploy any measures is not immunized by the PREP Act); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213-14 (7th Cir. 2022) (holding that failing to use masks and protective equipment is the opposite of administering a covered countermeasure). The United States Court of Appeals for the Fifth Circuit has also held, however, that the failure to use a covered countermeasure could relate to its administration if there was a "[p]rioritization or purposeful allocation of a [c]overed [c]ountermeasure." *Manyweather*, 40 F.4th at 246 (first alteration in original) (internal quotation marks omitted).

The question we reach here is whether Porcaro's death was related to the administration of a covered countermeasure, and in answering that question, we follow the reasoning of the federal courts. Crupi broadly alleges in her complaint that The Heights' failure to implement an effective COVID-19 response led to Porcaro's death, citing "poor and dangerous conditions" in the facility. She alleges that The Heights' policy permitting visitors to the facility as COVID-19 was spreading throughout Las Vegas directly caused Porcaro's death. She also

alleges that the failure to screen patients for high temperatures and COVID-19 contributed to Porcaro's death. Notably, none of these allegations involve the use of a qualified product; security countermeasure; emergency-use drug, biological product, or device; or respiratory protective device. *See* 42 U.S.C. § 247d-6d(i)(7). Crupi also does not allege in her complaint that the prioritization of another policy over a policy involving a covered countermeasure led to Porcaro's death. Instead, Crupi maintains that the inadequate COVID-19 policy led to conditions that caused Porcaro to become ill and die. Because a general lack of action is not a covered countermeasure under the PREP Act, and because Crupi alleged that the lack of an adequate COVID-19 policy, rather than a drug or device, led to Porcaro's death, the PREP Act does not apply. In holding that the PREP Act does not grant The Heights immunity here, we adopt the reasoning of federal courts that have distinguished a failure to follow infection-control procedures from an administration or use of countermeasures. *Hudak*, 58 F.4th at 856; *Shankle*, 574 F. Supp. 3d at 826. In doing so, we recognize that the PREP Act applies only when the allegations involve the administration or use of covered countermeasures. Accordingly, we conclude that Crupi's claims do not fall within the scope of the PREP Act because Porcaro's death was not related to the administration or use of a covered countermeasure and, therefore, the Act does not grant The Heights immunity.

*Nevada's Emergency Directive 011 did not bar Crupi's claims*

The Heights argues that Directive 011 immunizes it from liability because The Heights is an employer of health care workers as defined in Section 1 of Directive 011. It also argues that it is immune under Section 10 because it is a medical provider performing services related to COVID-19.

SUPREME COURT
OF
NEVADA

(O) 1947A

When interpreting an executive order, this court applies the principles of statutory interpretation. *Cervantes-Guevara v. Eighth Jud. Dist. Ct.*, 138 Nev. 87, 91, 505 P.3d 393, 397 (2022). This court looks first to the plain language of the order. *Smith v. Zilverberg*, 137 Nev. 65, 72, 481 P.3d 1222, 1230 (2021). Unless ambiguous or clearly intended otherwise, the words are "given their plainest and most ordinary meaning." *Knickmeyer v. State ex. rel. Eighth Jud. Dist. Ct.*, 133 Nev. 675, 679-80, 408 P.3d 161, 166 (Ct. App. 2017). An executive order is ambiguous when it can be understood in two or more contradictory ways. *See Chanos v. Nev. Tax Comm'n*, 124 Nev. 232, 240, 181 P.3d 675, 680-81 (2008) (discussing statutory interpretation).

NRS 414.110(1) generally creates governmental immunity for "activities relating to emergency management." It provides that the State, its political subdivisions, and "any worker complying with or reasonably attempting to comply with this chapter" will not be liable for an injury that resulted from "any necessary emergency procedures or other precautionary measures enacted by any political subdivision of the State." *Id.* This immunity is not available "in cases of willful misconduct, gross negligence, or bad faith." *Id.* During the COVID-19 pandemic, some governors issued executive orders to provide immunity to certain health care workers who fell outside of the PREP Act's protections. *See, e.g., Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 532 (D.N.J. 2020) (explaining that states such as New Jersey recognized that the PREP Act did not cover claims involving a failure to take countermeasures and instead filled the gap with executive orders to provide for such immunity), *aff'd by Maglioli*, 16 F.4th 393.

Directive 011 is one such order. Section 10 of Directive 011 incorporates these immunities and states the following:

> All providers of medical services related to COVID-19 are performing services for emergency management subject to the order or control of and at the request of State Government and shall be afforded the immunities and protections set forth in NRS 414.110, subject to the same exclusions therein.

Section 1 of Directive 011 provides, in part, the following:

> For the purposes of this Directive, a provider of medical services includes all categories of skilled personnel deemed necessary by the Governor's COVID-19 Medical Advisory Team to augment and bolster Nevada's healthcare workforce to the levels necessary to combat this pandemic, including without limitation, medical doctors, physician assistants, nurse practitioners, advanced practice registered nurses, registered nurses, licensed practical nurses, emergency medical technicians, advanced emergency medical technicians, respiratory care practitioners, paramedics, pharmacists, pharmacy technicians, medical students, nursing students, medical laboratory directors or technicians, and licensed or certified behavioral health professionals.

In interpreting Directive 011, we first observe that Directive 011 does not include health care facilities in the list of "provider[s] of medical services" immune from liability. The directive lists only individual medical professionals, although the order provides that the immunity conferred is not limited to the listed medical practitioners. This directive contrasts with many other states' similar executive orders, which specifically include health care facilities in their grants of immunity. *See, e.g.*, Mich. Exec. Order 2020-30, § 7 (Mar. 30, 2020) (explaining that "any licensed health care professional or designated health care facility" is not

SUPREME COURT
OF
NEVADA

(O) 1947A

liable for COVID-19 related injuries or deaths absent gross negligence); Ill. Exec. Order No. 2020-19, § 3 (Apr. 1, 2020) (stating that "Health Care Facilities . . . shall be immune from civil liability for any injury or death," absent willful misconduct, that occurred in the course of care "in response to the COVID-19 outbreak"); N.J. Exec. Order No. 112, § 9 (Apr. 1, 2020) (providing that any health care facility used to treat COVID-19 is immune from liability); Conn. Exec. Order No. 7V, § 6 (Apr. 7, 2020) (providing that "any health care professional or health care facility shall be immune from suit for civil liability for any injury or death alleged to have been sustained"); Ariz. Exec. Order 2020-27, §§ 3-5 (Apr. 9, 2020) (stating that any "Arizona healthcare institution" is immune from civil liability absent "gross negligence or reckless or willful misconduct"); Haw. Exec. Order No. 20-05, §§ 3-5 (Apr. 16, 2020) (providing that any health care facility providing services in response to COVID-19 is immune from liability); Miss. Exec. Order No. 1471, § III (Apr. 10, 2020) (same); Vt. Addendum 9 to Amended & Restated Exec. Order 01-20 (Apr. 10, 2020) (same); R.I. Exec. Order 20-21 (Apr. 10, 2020) (same).

Nevada's Directive 011 also does not explicitly exclude health care facilities from its grant of immunity. *Cf.* Pa. Exec. Order to Enhance Protections for Health Care Professionals (May 6, 2020) (providing that only the "individuals (and not the facilities or entities themselves)" are immune from civil liability). In light of the silence of Nevada's directive as to whether its grant of immunity extends to heath care facilities, the specific guidance in the executive orders of other states resolving that question, and the Nevada directive's provision that the immunity conferred is not limited to the enumerated professionals, we conclude that Directive 011 does not by

its plain terms resolve whether the immunity it establishes extends to health care facilities.

The doctrine of *ejusdem generis*, however, supports the conclusion that Directive 011 did not intend to extend immunity to health care facilities. *Ejusdem generis* teaches "that when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 163 n.4, 252 P.3d 668, 673 n.4 (2011) (internal quotation marks omitted). This court has interpreted the words "without limitation" broadly. *Sims v. Eighth Jud. Dist. Ct.*, 125 Nev. 126, 130, 206 P.3d 980, 983 (2009) (explaining that "without limitation" requires an expansive interpretation). Under *ejusdem generis* principles, the phrase "without limitation" would be interpreted consistent with the observation that the directive's list of health care personnel is extensive and includes examples of individual health care professionals rather than types of medical facilities. *Powell*, 127 Nev. at 163 n.4, 252 P.3d at 673 n.4. "[W]ithout limitation" would then encompass other types of individual medical practitioners—it would not include health care facilities themselves. We therefore conclude that the executive order was not intended to confer direct immunity on the facilities themselves.

A comparison between Directive 011 and NRS 41A.017 further supports the proposition that Directive 011 does not directly immunize health care facilities. NRS 41A.017 defines a "[p]rovider of health care" for purposes of NRS Chapter 41A ("Actions for Professional Negligence"). Like Directive 011, NRS 41A.017 lists examples of individual practitioners such as physician assistants, dentists, and licensed psychologists. But unlike Directive 011, NRS 41A.017 also includes facilities such as "a licensed

SUPREME COURT
OF
NEVADA

(O) 1947A

15

hospital, clinic, surgery center, physicians' professional corporation or group practice that employs any such person and its employees." While Directive 011 lists individual medical personnel, NRS 41A.017 lists both individual practitioners and facilities. Had the Governor intended to include health care facilities as immunized health care providers, he likely would have followed the formulation of a "[p]rovider of health care" used in NRS 41A.017 and specifically listed health care facilities.

While we conclude that Directive 011 does not grant direct immunity to health care facilities, our interpretation of Directive 011 does not negate traditional *respondeat superior* if a facility's liability flows only from actors included in the directive. For instance, if the facility is only liable through medical personnel immune under Directive 011, then the facility would also be immune pursuant to *respondeat superior*. *Cf. Yafchak v. S. Las Vegas Med. Invs., LLC*, 138 Nev., Adv. Op. 70, 519 P.3d 37, 40 (2022) (holding that skilled nursing facilities may be covered under NRS Chapter 41A when the complaint alleges liability against their nurses who are providers of health care under the definition in NRS 41A.017). In other words, if the injury stems from an immune individual, then the health care facility would be immune pursuant to *respondeat superior*. When the injury stems directly from the health care facility, however, then Directive 011 does not provide the facility with immunity. Accordingly, we conclude that Directive 011 does not grant direct immunity from suit to health care facilities.

*The district court correctly denied The Heights' motion to dismiss*

The Heights argues that this court should grant its petition for a writ of mandamus seeking to reverse the district court's determination that the PREP Act and Directive 011 do not grant it immunity from liability. Having determined that The Heights was not immune pursuant to either

the PREP Act or Directive 011, we conclude that mandamus relief is not warranted. Although its ruling lacked explanation on the matter, the district court correctly determined that neither the PREP Act nor Directive 011 provides immunity to a health care facility that failed to implement a COVID-19 prevention program. Accordingly, while we entertain this writ petition, we deny the request for mandamus relief.

## CONCLUSION

Whether claims alleging a lack of action to combat the spread of COVID-19 are barred under the PREP Act and Nevada's Emergency Directive 011 is a matter of first impression and a significant matter of public policy. We entertain The Heights' request for mandamus relief in order to clarify this issue. In doing so, we conclude that the PREP Act does not apply to a lack of action, including a lack of social distancing policies. We further conclude that the text of Directive 011 excludes health care facilities and its drafters did not mean to confer immunity from liability to them in this directive. Therefore, we conclude that the district court correctly determined that The Heights was not immune from Crupi's claims. Accordingly, we deny the petition for a writ of mandamus.

_____, J.
Stiglich

We concur:

_____, J.
Pickering

_____, J.
Parraguirre